*William C. Harrington*, for the State.
*Samuel Hitchcock*, for the defendant.

———

STATE *against* AMOS CLARK.

INDICTMENT for perjury.

The indictment charged the defendant with wilful and corrupt perjury, and stated in substance, that at a Justice's Court, holden before Mr. Justice *Cobb*, at ——, to wit, on the 11th day of *August*, A. D. 1801, the prisoner appeared as a witness in a cause wherein *Joel Titus*, as plaintiff, had impleaded one *Hubbel*, in an action upon book account. That it be-

State
v.
Clark.

came material to the issue, whether a certain sum charged in the·plaintiff's day-book, had been endorsed upon a certain promissory note, which *Hubbel* held against *Titus.* That the prisoner, well knowing that such endorsement had been made, after an oath in the usual form had been administered to him by competent authority, testified that the endorsement was not made; and so the Jurors on the oath say, that the said *Amos Clark* has committed wilful and corrupt perjury, *contra formam statuti.*

On arraignment the prisoner pleaded not guilty, and put himself on the country for trial.

The Attorney for the State, in support of the indictment, offered to adduce *Joel Titus* as a witness.

*Marsh,* for the prisoner, objected. He acknowledged, that the witness had no interest in the event of the cause, but insisted, that a person cannot be admitted to testify, *if he considers himself to be interested, though he should not in fact be interested;* for the bias in his mind to falsify facts, which is the sole reason for the rejection of an interested witness, would in such case be the same as if he were really interested, and greater than if he were really interested, and considered himself not to be so; and cited *Fortheringham* v. *Greenwood,* 1 *Stra.* 129.

If a witness considers himself interested when he is not, on being informed by the Court that he is not interested, he shall be sworn and testify, and the Jury shall allow for any possible bias in his mind in weighing his credibility.

*Sed per Curiam.* If the witness has considered himself to be interested, and any undue bias in his mind has been created from this consideration, it is to be presumed that it will be removed upon his being informed by the Court that he is not interested,

6

ed. If, however, he has unhappily contracted any prejudice from a supposed interest, too obstinate to be removed by this suggestion of the Court, the Jury will consider it in forming an opinion of his credibility.

Let the oath be administered to him.

Upon the State Attorney producing the record of the Justice's Court, it appeared that the Court was holden on the 11th of *September*, 1801, and not on the 11th of *August*, as alleged in the indictment.

The prisoner's counsel objected to the record's being read to the Jury, on account of this variance.

*Marsh.* That some particular day on which an offence was committed is necessary to be alleged in the indictment, will not be contended. In the case of *The King* v. *E. J. Holland*, Lord *Kenyon*, Chief Justice, observed, that " the objection which has the most extensive effect is, that no time is alleged when the different facts happened, which are essential to sustain the charge against the defendant. That it is necessary to state some time when each fact happened, that is material to constitute guilt, is so fully established, that the question must be considered at rest." 5 *Term Rep.* 624. But it may be said, that though it may be necessary to allege a certain time in the indictment, yet it is not necessary to prove that precise time on trial. This, however, will not meet our objection, which is, that the time in this case is material, and it is necessary, when it is so, both to allege and to prove it precisely.

We consider, that to support an indictment for perjury, it is incumbent on the government to show, not merely that the prisoner has sworn falsely ; for if the oath be *extrajudicial,* he cannot be convicted; but that he has testified falsely in a material fact before a Court who had competent authority to administer the oath and to try the cause. A Justice of the Peace, in the ordinary walks of life, has no power to administer oaths. He cannot ambulate his County and redress wrongs *ex debito justiciæ.* He can only do it when proper occasions present, which are provided for by statute, or arise under the common law. When he holds a Court, he can administer an oath to a witness to testify *viva voce,* but this only while his Court is open. Therefore the time of holding the Court is material in an indictment of this nature. We may have traversed the Court's having been holden at that time. It is not, as in the case of murder or arson, where, if a day is laid in the indictment, another day may be proved, for murder and arson are crimes, whether committed one day or another ; but if the Justice held no Court on the day laid in the indictment, and even administered the oath to the prisoner, and he swore falsely, he cannot be convicted of perjury, for the oath is extrajudicial.

Further, it may be observed, that the Justices of the Peace may hold Courts on every secular day in the year, and frequently have several Courts in successive months, for trials of issues between the same parties, and administer oaths to the same witnesses. If the day be not material, how shall the prisoner in such cases distinguish, that he may be prepared for his defence ?

We have a further objection, which is, that if an indictment misrecites a record, it is fatal.

It will not be denied, that if an indictment misrecites a statute, though the statute be *general*, and need not have been recited, it vitiates the indictment; and it would seem equally clear, that if an indictment misrecites a record, which is a *sine qua non* to the support of the indictment, it will be fatal.

In *Com. Dig.* vol. 6. p. 173. tit. *Record*, C. we find a variety of cases in civil causes where the mis-recital of a record is fatal; as, in the case of *Ince* v. *Hay, T. 9. G. Fort.* 353. " If debt on judgment of *Hilary* term, and *nul tiel record* pleaded, it appears to be a judgment of *Easter* term ;" if the name of any party, his abode or addition varies, 1 *Roll.* 753. l. 45. Surely a variance from the record in an indictment in favour of innocence will be held equally as fatal.

It may perhaps be said, that the 17th section of the statute upon which the indictment is founded, has given a latitude to prosecutions for perjury. It may as to the form of the indictment, but this section does not reach the evidence which may be necessary in support of it. This section is transcribed *verbatim et literatim* from the stat. 23 *Geo.* II. c. 11. and in the case of *The King* v. *Dowlin*, 5 *Term Rep.* 317. the prisoner was indicted for a perjury committed at an admiralty sessions, on the trial of one *Kimber*. After verdict, on motion in arrest of judgment, it was objected, that the admiralty commission was misrecited in the indictment; and although the rule was discharged, Lord Chief Justice *Kenyon* observed, in delivering his opinion, " I admit that, although it was not necessary for the prosecutor to set

out in the indictment the commission at the admiralty, *yet as he has undertaken to do it, if it be not properly set forth,* the indictment does not show a sufficient authority to try *Kimber.*" In this case reliance was had, in support of the indictment, upon the statute of 23 *Geo.* II.

The Attorney for the State arose to reply, but was interrupted by the Court.

If an indictment charges a perjury to have been committed before a Justice of the Peace, and misrecites the day of holding his Court, the record may be read, especially if the misrecital be under a *videlicet.*

*Curia.* In every sufficient indictment for perjury, it must be alleged, that an oath has been taken before a competent jurisdiction in a judicial proceeding, and that the accused testified falsely to some matter material to that in hearing. These are essential qualities, without which the crime could not exist, and must not only be set forth in the indictment, but sufficiently proved, in order to conviction. It is likewise necessary to show in the indictment a year and a day on which the material facts in it happened. It sometimes is necessary, that the precise time set forth in the indictment should be proved; sometimes it is not. Where the precise time is essential to the commission of the offence, there the year and day laid in the indictment must be proved. But the day of holding the Court before which the perjury is alleged to have been committed, is not an essential quality to the crime; and it is sufficient to prove any other day within the purview of the statute of limitations. The day of holding the Court is introduced in the indictment under a *videlicet,* in which case it seems by the books a greater latitude of proof is always allowed; but without entering into this nice distinction, the Court consider,

that the indictment explicitly charges the prisoner with wilful and corrupt perjury. If the charge is brought substantially home to him by plenary proof, it can be no legal or moral defence, that he committed the perjury on another day than that laid in the indictment.

Let the record be read to the Jury.

The witnesses disagreeing as to the testimony of the prisoner on the trial between *Titus* and *Hubbel*, and the fact of the endorsement on the promissory note not being fully proved, the Jury returned a verdict of not guilty.

*William C. Harrington*, for the State.
*Amos Marsh*, for defendant.