# The President &c. of the UNION BANK *versus* JOSIAH KNAPP.

In an action by a bank against a depositer for having overdrawn, the books of the bank are competent evidence to show receipts and payments of money.

If the clerk who made the entries is dead or insane, the book is admissible upon proving his handwriting.

A bank is bound to produce its books for the inspection of a depositer, upon proper occasions, and the officers of the bank having charge of them are so far the agents of both parties.

In an action by a bank against a depositer, who was supposed to have overdrawn in consequence of a mistake in the leger, the clerk who made the mistake said he did not know whether he was accountable or not, and that if the money should be lost he should remunerate the bank, if required. *Held*, that he was not liable to the bank, or at most only on a contingency, and that he was a competent witness on the part of the bank.

Where an account between merchants has been balanced, and a balance carried for ward, it is no longer an open and running account, and the parties cannot go behind such settlement, without leave obtained upon a bill in chancery, to inquire whether the balance is founded in error.

Thus, the usage of a bank was, at the end of every month, to balance the bank book of a depositer and make the balance the first item in a new account, and to restore to the depositer the checks drawn by him during the month; and it was *held*, that the bank could not go behind any such settlement, and that the statute of limita tions begins to run, as to any such balance, from the time of so stating the account.

ASSUMPSIT for money had and received. Pleas, the gen eral issue and the statute of limitations.

The defendant had been accustomed to make deposits in the Union Bank, and this action was brought on the ground that the bank had by mistake credited him with 1000 dollars more than he had deposited, and that in consequence he had overdrawn to that amount.

At the trial the plaintiffs offered in evidence the leger and journal of the bank ; which were objected to by the defendant

Union Bank as incompetent evidence, but the judge permitted them to go
v.
Knapp.    to the jury.

It appeared by the leger, that the items of cash put to the defendant's credit in the month of November, 1817, when correctly added, amounted to 1000 dollars less than the actual footing ; and that the balance was so struck as to include this sum in that which was carried to his credit the ensuing month. The leger contained entries of debt and credit every month after, until February, 1824, when the dealings between the bank and the defendant ceased, there being then a balance in his favor of 12 dollars, 24 cents, which was paid on his check, the cashier saying, that the defendant would do what was right. A balance was struck at the end of every month, and the above-mentioned sum of 1000 dollars was included and carried forward in every account. By the actual entries for February, 1818, the defendant overdrew, on the 18th of that month, 421 dollars and 13 cents. If he ought to have been charged with the 1000 dollars, the amount overdrawn would be increased, and the balance of the preceding month, and also of divers subsequent months, would be against him.

The journal contained similar items of charge and credit with the leger, except the footings at the end of each successive month ; and it was stated by the plaintiffs, and not denied, that if the sums drawn out or charged on one side, and the deposits on the other, were respectively added, commencing on the 1st of November, 1817, they would show, on striking a balance at the end of January, 1824, that the sum of 988 dollars, 76 cents, had then been overdrawn.

The blotter kept by the receiving teller of the bank, and containing his entries of the deposits, was admitted in evidence, though objected against by the defendant. The person who kept this book was alleged to be insane, and his handwriting was therefore allowed to be proved by the testimony of Nathaniel Emmons. The entries in the blotter appeared to correspond with those in the journal, as it respects the items of credit given by the bank to the defendant.

In consequence of a notice upon the defendant to produce his deposit books (usually called *bank books*) he made affidavit, that he had searched for them, but that he was unable to find

any except two, which he brought into court, commencing in 1823.

Chester Adams, a witness on the part of the plaintiffs, testified that he had been cashier of the bank since 1819 ; that in depositing money their method is, to have it pass into the hands of the receiving teller, who notes it on a blotter to the name and credit of the depositer. The second bookkeeper transfers the entry from the blotter to the journal, and the first bookkeeper posts from the journal into the leger. The receiving teller has nothing to do with the journal. The money is examined by him and usually entered in the depositer's book, after being first entered in the blotter, but sometimes deposits are received when the depositer's book is not brought in. When money is drawn out, it is always done by a check. The paying teller receives the checks and keeps likewise a memorandum of the sums, but does not enter the names ; this is done by the person who keeps the journal, directly from the checks. It is the rule to balance the accounts in the leger and depositer's book at the end of the month ; the latter is written up by different persons, as it may happen. It is made up from the checks and original entries and compared with the leger, and is always corrected by the leger. The person who writes up the depositer's book generally foots it, but not always. The second bookkeeper does it sometimes, and then hands it to the first bookkeeper, whose business it is to foot up and balance the leger. It often happens that the books do not agree ; but the bookkeeper corrects any error as soon as it is found. He holds the checks until the deposit book is balanced, and de livers up the checks with the book, if found right, but not otherwise. At the close of the day the receiving teller and journalist compare their books, and the cash of the receiving and paying tellers is compared with their books. The witness further testified, that it was customary with banks to take a trial-balance once a month, and that none had been correctly taken at this bank for some years, before he was made cashier ; and he stated the manner in which the error in question had been discovered by means of the trial-balance.

Samuel Parker, also called by the plaintiffs, testified that he nad been paying teller of the bank for more than ten years ;

Union Bank
v.
Knapp

that he made a memorandum of the checks paid by him in figures, without names, and footed the sums. He had no concern as to their being carried to the right person in the journal, which was done from the checks themselves. He never examined the journal, unless there was an error in the footing. At the end of each day he compared the foot of his items with the entries in the journal, and if any mistakes had occurred they were corrected.

Nathaniel Emmons, the clerk who made the mistake in question, was also called by the plaintiffs, and being asked whether he expected to gain or lose by the event of this suit, he said he did not know whether he was accountable to the bank or not; and that if this money should be lost, he would sell his house or anything else, if required by the bank. His competency was then objected to by the defendant, but the objection was overruled. The witness then testified that he had been first bookkeeper of the bank for thirty-two years; that he kept the leger, and that there was an error in it made by himself of 1000 dollars in the account of the defendant. He generally looked at the leger before striking the balance in a depositer's book. He sometimes compared the items and sometimes did not. He always looked at the balances and footings.

The journal of 1817 being offered, and it being stated that the person who kept it was deceased, Emmons was admitted to testify to his handwriting, although this was objected to on the part of the defendant.

Evidence was produced on the part of the defendant, to show that it was usual and necessary for banks to make a trial-balance often; that by that means any mistake would be discovered; that mistakes are sometimes made at the banks by crediting deposits to the wrong person; and that it was not the practice with the defendant or with other depositers to be careful of their old deposit books.

The jury found a verdict for the plaintiffs.

*March* 16th *and* 17th.

*Prescott* now contended that a new trial ought to be granted. The defendant has great reason to complain of the negligence of the bank in not sooner calling upon him to rectify the mistake which is supposed to have been made. If the bank had

taken a trial-balance at the time, as they ought to have done, and had given the defendant notice of the apparent error in his account, he might then have ascertained by his deposit book, whether there was in fact such an error ; but he has not preserved his book, thinking it of no use. It is incumbent on the plaintiffs to show the mistake clearly by legal and strict proof.

The books of the bank ought not to have been received in evidence, as they were not kept correctly nor in conformity to bank usage, not having been subjected periodically to the trial-balance ; the omission of which is a proof of gross negligence. They were not testified to by the persons who made the original entries. The books of a bank are not entitled to more favor than those of merchants generally, nor indeed to so much. They are not made with a view to their being evidence against the person dealing with the bank. He has no access to them. The bank receives the money and gives credit for it upon the depositer's book, and pays it out upon his order. It appears that in November, 1817, the plaintiffs paid 1000 dollars more than was credited in the leger. They are bound to show that the leger contains all the sums that were received and paid out during that month. The deposit book is not a transcript from the leger, nor are the items in the two compared ; *non constat* therefore that the error was carried into the deposit book. The defendant may have deposited the sum of 1000 dollars which has not been entered in the leger. Such an omission might be made by mistake or design. The receiving teller might have put the money into his own pocket. The deposit book is a book of original entries ; the leger is but secondary evidence, even if it were proved to correspond with the deposit book. The checks were the legal evidence of the payments made by the bank ; but they have been given up and the defendant had a right to consider the account as settled. The receiving teller sometimes makes his entries in the deposit book first, and sometimes in the blotter ; as they are not always made first in the blotter, that book cannot be admitted in evidence. The journalist does not know that the checks from which he makes his entries have been paid ; so that the journal cannot be legal evidence. The books are not proper evidence

Union Bank
*v.*
Knapp.

100

of the payment of large sums of money. Merchants' books are admitted by the usage of this State only in regard to sums not exceeding forty shillings. 1 Phil. Ev. 196 ; *Cooper* v. *Marsden*, 1 Esp. R. 1. It is true that one of the clerks is dead and another insane ; but the defendant is not in consequence to be charged with a large sum of money merely by their entries in the plaintiffs' books. *Calvert* v. *Abp. of Canterbury*, 2 Esp. R. 646. The plaintiffs should have shown that the money remaining in the bank at the date of the error, was counted, to ascertain whether there was any actual deficiency in their funds.

The witness Emmons should have been excluded on the ground of interest, as he said he felt bound to indemnify the bank if it should be required of him.

In regard to the statute of limitations, the replication is that the defendant promised within six years. There was no evidence of any such promise or acknowledgment. The question whether the case comes within the exception of the statute relative to merchants' accounts, is not properly presented under the issue joined. But in fact the dealings of these parties were not like those between merchant and merchant. There was no buying and selling. We rely however on the point, that the accounts between these parties were mutually stated and settled, and the vouchers cancelled, more than six years before the commencement of this suit. The balance found due to the defendant became itself a new item. The plaintiffs cannot now go into an inquiry in what manner this balance was obtained. If they could, they might inquire into settlements made any number of years back, without any limitation. The exception as to merchants' accounts applies only to open and running accounts and not to accounts stated. *Webber* v. *Tivill*, 2 Wms's Saund. 127, note 6 ; *Catling* v. *Skoulding*, 6 T. R. 189 ; *Welford* v. *Liddel*, 2 Ves. sen. 400 ; *Barber* v. *Barber*, 18 Ves. jun. 286.

*Loring*, for the plaintiffs, contended, 1. That the bank books were proper evidence, from necessity, for the sake of trade and common usage of business. In all cases the best evidence which the nature of them admits, is, for that reason, legal evidence. Otherwise, men acting with ordinary care and

discretion might suffer wrong without a remedy. This princi-
ple operates in numerous instances in contravention of the strict
rules of evidence, upon the ground that the presumption of
evil to arise from admitting the testimony which they would
exclude, is counteracted by the presumption of the greater evil
which would result from its rejection ; it being evident that the
modes of doing business generally acquiesced in, are those best
suited to its successful and safe management, and that to ex-
clude the only testimony which they admit of, would tend to
embarrass trade. This principle is particularly applicable to the
case at bar. It is evident that these books are the only evi
dence which the plaintiffs can have. The only vouchers ever
existing were the checks drawn by the defendant, and the little
book given to him ; the former have all been delivered up to
him according to the usage, and the latter is his and can be made
evidence only by his consent. The plaintiffs have no other evi-
dence of any payments ; and if these books are not evidence,
every bank in the commonwealth is at the mercy of every de-
positer who can prove by a servant or clerk the deposit of any
money. These checks are given up to the depositer on the
ground that they have been entered in the books, and that his
deposit book is a counterpart of these books ; so that he tacitly
consents that the bank may substitute their books for evidence
instead of those checks. The cases decided on this principle
are very numerous, thus forming exceptions to the firmest rules
of evidence. *Price* v. *Torrington*, 1 Salk. 285 ; *Welsh* v.
*Barrett*, 15 Mass. R. 380 ; *Evans* v. *Lake*, Bull. N. P. 282 ;
*Dixon* v. *Cooper*, 3 Wils. 40 ; *Benjamin* v. *Porteus*, 2 H. Bl.
590 , *Wyndham* v. *Chetwynd*, 1 Burr. 422 ; *Martin* v. *Horrell*,
1 Str. 647 ; *Poultney* v. *Ross*, 1 Dallas, 239 ; *Curren* v.
*Crawford*, 4 Serg. & Rawle, 3 ; *Vosburgh* v. *Thayer*, 12
Johns. R. 461 ; *Cogswell* v. *Dolliver*, 2 Mass. R. 217 ; *Her-
man* v. *Drinkwater*, 1 Greenl. 27. In all these cases evidence
is admissible from necessity, which would otherwise be incom
petent, and in some of them there might be great danger ; but
there can be none here ; bank books are kept according to a
uniform system, which has been gradually matured and is the
best for the safety of all parties, which human ingenuity could

10

devise, and by clerks selected for their skill and honesty and wholly disinterested.

2. That the clerks are agents of both parties. They make all the entries in depositers' books and those of the bank; they furnish each party with a set of accounts in books. We produce ours and call on the defendant to produce his. The whole system of banking is founded on the mutual advantage accruing to the bank and the depositers; neither pays the other any other price for the benefit enjoyed, and the clerks are paid from the profits arising from this mutual benefit; so that they are strictly speaking agents of both parties. There are no documents or vouchers which either party can produce, but what they furnish.

3. That the depositer's book is tantamount to a bill delivered   The plaintiffs are bound to prove their payments only, and exhibit the account in their books, of which a counterpart was delivered to the defendant; for his deposit book is in part one of original entries made at the same time with those in the blotter, and as to the rest is copied from the journal and compared with that and the leger, and also with the checks before they are delivered up; so that it is given and received as a statement of the accounts between them, and, unless objected to, is evidence of an admission of them.   1 Phil. on Ev. '6th ed.) 252.

4. That bank books are in the nature of public records — concerning the public in general and kept or superintended by officers designated by law — and are therefore evidence. *Mann* v. *Carey*, 3 Salk. 155; *Marsh* v. *Collnett*, 2 Esp. R. 665; *Rex* v. *Mothersell*, 1 Str. 93.

If the books would be evidence in case the clerks who made the entries were called as witnesses, the death or insanity of the clerks is immaterial, provided their handwriting be proved. *Lewis* v. *Norton*, 1 Wash. 76; *Pritt* v. *Fairclough*, 3 Campb. 305; *Welsh* v. *Barrett*, 15 Mass. R. 380; *Kennedy* v. *Fairman*, 1 Hayw. 458; *Adam* v. *Rogers*, 1 Bay, 480.

The objection that books are not evidence of cash payments, applies only to tradesmen's books, whose ordinary deal-'ngs are not in cash.   But in this case the only dealings be-

tween the parties were in cash, and the only evidence of them is by books kept for their mutual benefit.

There is no force in the objection, that the person who makes the entries does not pay the money ; the paying teller does make memoranda or entries on the blotter, and passes the check to the journalist, who makes the entry at large, and they afterwards compare their entries. ˙The paying teller pays upon his knowledge of the depositer's signature, and the journalist has the same evidence ; and the journal and blotter are compared, so that it is impossible to have a mistake in the teller's account, unless by fraud between him and the journalist. The security to the depositer is more than double what it would be if only one person paid and made the entries.

Emmons was a competent witness ; he was not legally interested in the event of this suit. He could not be made responsible for an innocent mistake in the course of his employment ; and a merely honorary obligation does not affect his credibility. *Union Bank* v. *Clossey*, 12 Johns. R. 271 ; *Pederson* v. *Stoffles*, 1 Campb. 144 ; Phil. on Ev. (6th ed.) 50, 51 ; *Gilpin* v. *Vincent*, 9 Johns. R. 219. But if interested, his interest was contingent, depending on the bank's requiring him to make good the loss, and therefore did not disqualify him. To exclude a witness, the interest must be certain, or the verdict must be capable of being used in a subsequent suit against the witness. *Stockham* v. *Jones*, 10 Johns. R. 21 ; *Case* v. *Reeve*, 14 Johns. R. 79 ; *Rex* v. *Cole*, Peake's Cas. 217 ; *Rex* v. *Teasdale*, 3 Esp. R. 68 ; *Newland's Case*, 1 Leach, 353. If these grounds fail us, we contend that he was an admissible witness from necessity, within the rule before stated. He was not more interested than a factor or a person swearing to his own books ; and his testimony was essential, for no other witness could testify to the comparing of the deposit book with the leger.

As to the objection that this mistake in the leger does not prove a corresponding one in the deposit book, the answer is, that the books being admitted raise that presumption, and of the strength of it the jury were the sole judges. There must have been a similar mistake in the deposit book ; or the defendant must have been there credited with the sum of 1000 dollars

105

Union Bank
    *v.*
  Knapp.

which has not been credited to him in any other book    The plaintiffs do not rely upon the leger to prove the over payment . they show the books of original entries which prove it ; the leger is introduced merely to show how the mistake was made, and that a similar one existed in the defendant's deposit book, as the balances in them could not otherwise agree.    Taking the number of depositers, the different sums deposited, &c., into consideration, it would be easy to show that the presumptions are almost infinite in favor of the belief, that the same mistake was made in the defendant's book.

In regard to the statute of limitations, we rely on the point that this is an open account.    Every new item of credit is an admission of an unsettled account between the parties.    *Catling* v. *Skoulding*, 6 T. R. 189.    Where a balance is stated and carried forward, it makes an open account from the beginning.    *Farrington* v. *Lee*, 1 Mod. 270 ; *S. C.* 2 Mod. 312 ; *Cogswell* v. *Dolliver*, 2 Mass. R. 217.    It is said that the balance becomes an item in the new account.    But this item is something to be proved, and it is necessary to inquire into the former accounts to see whether it is due.

*S. Hubbard*, on the same side, added that this action did not accrue until a demand was made upon the defendants.    *Topham* v. *Braddick*, 1 Taunt. 572 ; *Clark* v. *Moody*, 17 Mass. R. 145.    It is said that the books were not intended to be used as evidence, but if so, the checks would not have been given up.    The Court have settled, that persons dealing with banks are bound by their usages.

*Prescott* in reply.    The cases which have been cited do not show that entries in books have ever been admitted to prove such large charges of cash as those now in question.    In *Price* v. *Torrington* the man who made the entries charged himself, and so they were admitted in evidence.

The bank clerks are nowise the agents of the depositers, and it would be impertinent in a depositer to ask to inspect the bank books.    It was the duty of Emmons to compare the deposit book with the leger and to take a trial-balance.    Having neglected to do so, he was liable to the bank ; and though he might not be guilty of a breach of trust, so as to make his bondsmen answerable, still he would be bound to indemnify the bank for

a loss occasioned by his mistake.   If he felt that he had an interest in the event of the suit, he was disqualified to be a witness.   *Plumb* v. *Whiting*, 4 Mass. R. 518.   The bank ought to have given him a release.   It is said that when accounts are balanced and a balance carried forward, the parties may go back beyond six years and investigate in what manner the balance was made up ; but that would be a mischief which the statute intended to remedy.   This is the common case of money paid by mistake, and no demand was necessary to give a cause of action.

PUTNAM J. delivered the opinion of the Court.   We are in the first place to consider, whether the books of the bank were competent evidence.

It was said by Lord *Kenyon*, in *Cooper* v. *Marsden*, 1 Esp. R. 1, " That the rule of evidence was clear, that entries in the books of bankers or persons keeping books respecting their trade or business, *could only be proved* by the clerks who had made the entries ;" and he rejected evidence of the handwriting of the clerk, who was in India.

It seems to have been taken for granted, in that case, that the books of bankers were to be received in evidence, if properly proved.   No other objection was made, but that the clerk who made the entries was not in court to prove them.   It was not suggested, that if he had been present and had proved them, the books would not have been competent evidence.

We think the remark, that such books could *only be proved* by the clerk who made the entries, requires some qualification. If, for example, he had deceased, it seems very clear from the cases cited by the plaintiffs' counsel, that proof of his handwriting would have been admitted ; and the same judge, in *Digby* v. *Stedman et al.*, 1 Esp. R. 328, admitted the book of a watchmaker, which was in *his own* handwriting, as competent evidence in corroboration of the testimony of his servant, who testified to the delivery of a watch charged in the book.   In the case cited, of *Cooper* v. *Marsden*, the testimony of the clerk might have been obtained.   He was living, although beyond seas.   In Pennsylvania, proof of the handwriting would be admitted, if the clerk were dead or out of the jurisdiction of the court. *Sterrett* v. *Bull*, 1 Binn. 237.

**107**

Union Bank
v.
Knapp.

Many cases are to be found, where the entries of servants, stewards, and attorneys, in the books of their principals, or in books kept by and for themselves, have been admitted as evidence after their decease. Thus in *Doe* v. *Robson*, 15 East, 32, where the point in controversy was, when a certain lease was delivered, the charge of the attorney, who had deceased, was admitted, to prove that it could not have been written when it bore date.

In *Lewis* v. *Norton*, 1 Wash. 76, it is laid down as a general proposition, that " ever since the decision in *Lord Torrington's case*, the law has been settled, that a book of accounts in the handwriting of, and kept by, a clerk who is since dead, is proper evidence upon those facts being proved."

The case cited by the plaintiffs' counsel, of the *Assignees of Sir Stephen Evans* v. *Lake*, Bull. N. P. 282, is strong to this point. The question was, whether eight shares which Lake had purchased in his own name, were in truth for the account of Evans. Six of the receipts were in the hands of Evans, upon which his bookkeeper, who was proved to be dead, had made memoranda referring to the book of Evans, wherein was a charge of the payment of the money by Evans. The book was admitted not merely as to the six, but likewise as to the two which were in the hands of Lake's son.

So a memorandum upon a paper purporting to be a copy of a license, made by a merchant's clerk who was deceased, was admitted as evidence tending to prove that he had sent the original, according to his usual manner of transacting the business. *Hagedorn* v. *Reid*, 3 Campb. 379.

So the entries of a steward, who had afterwards deceased, of sums paid by trespassers, were held competent evidence in a cause relating to the title of his master. *Barry* v. *Bebbington*, 4 T. R. 514.

108

The case in our own books, of *Welsh* v. *Barrett*, 15 Mass. R. 380, is to tne same point. There the memoranda of a messenger of a bank who had deceased, was admitted as tending to prove notice to indorsers.[1]

---

[1] The doctrine, that entries made in the usual course of business, by one who had no interest to falsify, should be received in evidence after his death, seems to be regarded by Starkie, (1 Stark Ev. 5th Amer. ed. 298 to 302,) as

114

And there is a peculiar reason in the case at bar, why the books of the bank should be given in evidence, for the bank furnishes transcripts of them to its depositers ; which in effect operate as the mutual acknowledgment of the parties as to their money dealings.   In this respect it is like the case of *Wiltzie* v. *Adamson*, where Lord *Kenyon* admitted in evidence a book kept by servants at an inn, for articles, delivered to a club, it appearing that the members of the club had access to the book. 1 Phil. on Ev. (6th ed.) 252.   And we are of opinion, that the books are to be open for the several depositers, and that the bank is bound to produce them on all proper occasions.[2]   The officers of the bank having the charge of the books, are to be so far considered as agents for both parties.

But it is objected, that Nathaniel Emmons was not a competent witness to prove the entries made by him in the leger which he kept, on account of interest.   In answer to the question, whether he expected to gain or lose by the event of the suit, he said, " that he did not know whether he was accountable or not, and if this money should be lost he would sell his house or any thing else, if required by the bank."   He said, " the error was of his making."   If it was error only, and not a breach of trust, he would not be liable for it.   *President &c.*

---

the correct doctrine, on principle.   He, however, considers it not clearly settled by the cases, whether, in addition to the absence of all interest to falsify, there should not also be an interest not to falsify, in the party making the entries.   See also 1 Phil. Ev. (7th Lond. ed.) *p.* 260, 262, 263, and the cases cited in the notes; *Barker* v. *Ray*, 2 Russell's Ch. R. 67, and the cases cited in the note.   In *Spiers* v. *Morris*, 9 Bingh. 687, it was decided that entries of receipt of rent by a deceased executor, who received and accounted for it in that capacity, and under whom the plaintiff claimed, were evidence for the plaintiff.   So in *Lichfield* v *Stacy*, 6 Carr. & Payne, 139, it was held, that entries signed by a deceased agent by which such agent was charged, were receivable in evidence, though the entries themselves were not in his handwriting.   In both of these cases the court rely much on the fact, that the entries were made against the interest of the parties making them.

The American cases do not seem to demand this additional security.   See *Nicholas* v. *Webb*, 8 Wheat. 326; *Halliday* v. *Martinet*, 20 Johns. R. 168; *Halliday* v. *Littlepage*, 2 Munf. 316; *Welsh* v. *Barrett*; 15 Mass. R. 380; *Union Bank* v. *Knapp, supra ; The Farmers' and Mechanics' Bank* v. *Boraef*, 1 Rawle, 152; *Brigs* v. *Low*, 5 Gill & Johns. 134; *State Bank* v. *Cain*, 1 Breese, 45; *Nichols* v. *Goldsmith*, 7 Wendell, 160.

[2] 2 Stark. Ev. 734; *Francis* v. *Ocean Ins. Co.* 6 Cowen, 404; *Bank of Utica* v. *Hillard*, 5 Cowen, 419 ; Angell & Ames on Corporations, 408, 409

Union Bank
v.
Knapp.

of *Union Bank* v. *Clossey*, 10 Johns. R. 271. It was also, at most, a conditional liability, depending upon the requisition of the bank ; which it is not to be presumed would be made in a case of mere mistake, and which if made would be fruitless. The witness was under a mistaken notion that he was bound in honor to compensate for his innocent mistake ; but such an opinion does not disqualify a witness.[3]  *Pederson* v. *Stoffles*, 1 Campb. 146. It must be a direct interest which is to render a witness incompetent. Ibid. *in notis.*

But it is further objected, that the clerk who made the entries in the blotter is not produced ; and therefore that the blotter should not have been admitted in evidence. But it is alleged, and not denied, that he has become insane. If he were dead his handwriting might be proved, as was done in the case of the clerk who kept the journal, and who has deceased. *Pitman* v. *Maddox*, 2 Salk. 690. His insanity renders him as unable to testify as his death would have done. His handwriting was therefore properly proved by another witness.[1]

The objection that the entries were not made by the persons who paid out the money charged, we think ought not to prevail, because according to the course of the business the correctness of the charges of the bank is to be ascertained by the depositer from his checks, which are delivered up every month when his bank book is settled ; and if he is careful to preserve his bank book, he has the means of detecting any error. The credit which is given to him, being in the handwriting of some one

---

[3] *State* v. *Clark*, 2 Tyler, 277; *Long* v. *Bailie*, 4 Serg. & Rawle, 226, *Fernsler* v. *Carlin*, 3 Serg. & Rawle, 130; *Corman* v. *Foster*, 1 Ashmead, 133; *Smith* v. *Downs*, 6 Connect. R. 365; *Gilpin* v. *Vincent*, 9 Johns. R. 219; *Moore* v. *Hitchcock*, 4 Wendell, 292.

But see *Plumb* v. *Whiting*, 4 Mass. R. 518; *Richardson* v. *Hunt*, 2 Munf. 148; *Senteney* v. *Overton*, 4 Bibb, 445 ; *Lansingburg* v. *Willard*, 8 Johns. R 428.

See also *Peter* v. *Beall*, 4 Harr. & M'Hen. 342; *Moore* v. *Sheridine*, 2 Harr. & M'Hen. 453; *Henry* v. *Morgan*, 2 Binn. 497; *Skillinger* v. *Bolt*, 1 Connect. R. 147

[1] An instrument attested by a person who has become blind may be proved by evidence of his handwriting, without calling him. *Pedler* v. *Paige*, 1 Moody & Rob. 258. A book account may be proved by proving the handwriting of the clerk, who made the entries, if he be out of the State. *Elms* v. *Chevis*, 2 M'Cord, 350. But see *Kennedy* v. *Fairman*, 1 Haywood, 458.

authorized by the bank to make it, is as obligatory upon the bank as a formal receipt given for every sum deposited would be. The books, having been authenticated, as before stated, were properly submitted to the jury as competent evidence, and they were the judges of the weight of the evidence.

It will be perceived, that this decision does not touch or enlarge the doctrine of the admissibility of the books of a merchant or other person, who makes the entries himself, and who is permitted, according to the practice in Massachusetts and in most, if not all, of the New England States, to make his suppletory oath respecting the charges.[2] In regard to cash, the sums to be proved in that manner have been limited in this State to 40 shillings, or 6 dollars 66 cents.[3] But this decision proceeds upon the ground before stated, warranted by the authorities of the common law, and independently of our local usage, which admits the party in certain cases to verify his books of account by his own oath.

There is however another matter of defence which we think a sufficient answer to this action, and that is the statute of limitations.

It appears that the supposed mistake was committed in November, 1817. The defendant has pleaded, that the cause of

Union Bank
*v*
Knapp.

---

[2] See *Cogswell* v. *Dolliver*, 2 Mass. R. (Rand's ed.) 222, and the numerous cases cited in note (a); *Smith* v. *Sanford*, 12 Pick. 139; *Holmes* v. *Marden*, 12 Pick. 169. In this last case it was decided, that where a party's own books, with his suppletory oath, are competent evidence to prove the charges therein contained, secondary evidence of the contents is admissible in case the books are lost or destroyed. But he, who voluntarily and without accident or mistake destroys primary evidence, thereby deprives himself of the use of secondary evidence. *Broadwell* v. *Stiles*, 3 Halst. 58. Evidence that the party swearing to his own account books is unworthy of belief on oath, is admissible. *Kitchen* v. *Tyson*, 2 Murphey, 314. In *Linnell* v. *Sutherland*, 11 Wendell, 568, it was held, that, in a suit by a mechanic for work done in his line of business, after proof of one or two items of his account, the production of his books of account, with proof that he kept honest and fair books, was competent evidence. In South Carolina the books of a *schoolmaster* were held not admissible, to prove his account for schooling. *Pelzer* v. *Cranston*, 2 M'Cord, 328.

[3] *Dunn* v. *Whitney*, 1 Fairfield, 9. But a charge for 2088 pounds of wool may be recovered in an action on book account, if sold and delivered, and the object of the action is to recover the just value of the wool. *Leach* v. *Shepard*, 5 Vermont R. 363 But see *Dunn* v. *Whitney, supra; Terill* v. *Beecher*, 9 Connect. R. 344

Union Bank
v.
Knapp.

action accrued more than six years prior to the commencement of this suit. The plaintiff has replied that the defendant has promised within six years ; and he contends that the account is open, mutual, and running, from that time until January, 1824. If that is true, the law is well settled, that every charge within six years is to be considered as an acknowledgment that there is an unsettled account, and as evidence of a promise to pay the balance. Thus in *Catling et al. Ex'rs* v. *Skoulding et al.* 6 T. R. 189, the testator was an attorney, and his demand against the defendants was for rent. The defendants filed a set-off for articles of merchandise furnished by them as vintners and tallowchandlers. But the case finds expressly, that *there never was any settlement of accounts between the testator and the defendants.* It appeared that the last half year's rent on one side, and one or two articles of merchandise on the other side, were charged within six years. Lord *Kenyon* delivered the opinion of the court, and said, that " every new item and credit in an account given by one party to the other is an admission of there being some unsettled account between them, the amount of which is afterwards to be ascertained ; and any act which the jury may consider as an acknowledgment of its being an open account is sufficient to take the case out of the statute." And he made the proper distinction between that case and the case of *Cotes* v. *Harris*, Bull. N. P. 149, where the items were all on one side ; holding that in such case the last item within six years should not draw after it those items which were of longer standing.[1] This case seems to us to have been rightly decided.

But we do not think that the facts in the case at bar do prove this account to have been open and running from November, 1817, to January, 1824. On the contrary, it is proved that the accounts have been stated and settled monthly, and that the checks, which were the vouchers for all the charges against the defendant, were then given up. It is contended, however, by the counsel for the plaintiffs, that as the accounts did not exactly balance each other at the end of each month, and as the money was not in fact paid by the one ·to the other party who

---

*Turnbull* v. *Strohecker*, 4 M'Cord, 211; *Buntin* v. *Lugow*, 1 Blackford, 373

happened to be the creditor, but the differences were carried <span>Union Bank</span>
forward from time to time, therefore the accounts must be con-      <span>v.</span>
sidered as open and running on, notwithstanding those monthly       <span>Knapp.</span>
settlements ; and we are referred to the case of *Farrington* v
*Lee*, 1 Mod. 269, and 2 Mod. 312, as authority for that posi-
tion.    That was an action of *assumpsit*, grounded upon an
account which had been stated more than six years before.
The defendant pleaded the statute of limitations.    The plaintiff
replied that the account was between merchants, and concerned
trade and merchandise, and so was excepted from the operation
of the statute ; but the court gave judgment for the defendant ;
and held, that where the account is once stated, (as it was in
that case,) the plaintiff must bring his action within six years.
That was decisive of the case in favor of the defendant.    But
the court undertook to settle a point not required to be decided
in that case, which is now relied upon by the counsel for the
plaintiff, *viz.* that " if the account be adjusted, and a following
account is added, in such case the plaintiff shall not be barred
by the statute, because *it is a running account.*"    But to what
is the following account to be added ?    Not to the former ac
count as it stood, but to the balance of the former account as it
had been settled.    That balance constitutes one of the items of
the new account ; and if the new account shall run on mutually
to a time within six years, that balance, although arising more
than six years before, will be saved and drawn out, as it is
sometimes expressed, from the operation of the statute, by the
charges which are within six years.    If that case is to have
this construction, it is to be supported, and is conformable to
the doctrine laid down by Lord *Kenyon*, in *Catling* v. *Skould
ing*, before cited.    For example, suppose that the balance of
the account stated in November, 1817, had been carried to a
new account, which had continued to run on mutually until
January, 1824, without any intervening settlement.    In such
case the law would infer a promise to account for all the items
in such new account and to pay the balance of the same.    But
this construction will not avail the plaintiff, because the account
which was added to the balance of November, 1817, did not
continue open and running until January, 1824, but was open        112
and running only for a month at a time.    Three or four state-

ments and settlements were made by the parties between November, 1817, and the commencement of the six years next before this suit was brought.

The plaintiff cannot prevail unless we adopt the argument of his counsel, which has been pressed with much force and ingenuity, that where accounts are settled by carrying the balances forward instead of paying the same in cash, they are to be considered as open and running accounts from the beginning, and so not within the statute of limitations. We do not think this inference is to be drawn from the case of *Farrington* v. *Lee*, cited for the plaintiff, but if it is, we should consider that this point was as erroneously decided as was another in the same case, namely, that the saving clause in the statute as to merchants' accounts extends only to actions of *account*. It is now settled that the exception is to be applied to actions of *assumpsit*, as well as to actions of account. *Mandeville* v. *Wilson*, 5 Cranch, 18. Indeed contradictory and unsound opinions touching the exception in the statute are not only to be found in that case, but they abound in the books of the law. Lord *Eldon*, in *Foster* v. *Hodgson*, 19 Ves. 184, thinks that the opinions in regard to the question, whether the same law that applies to *open* accounts applies to *merchants'* accounts, are not to be reconciled ; one opinion being, that accounts between merchants. are not within the statute at all, but stand just as they would if no statute of limitations had been made, while another, and it seems to us the better opinion, is, that they are barred by the statute, if more than six years have passed since the dealing ceased.[1] *Barber* v. *Barber*, 18 Ves. 286 ; *Webber* v. *Tivill*, 2 Wms's Saund. 127, and notes 6, 7.

But however that may be, the point now under consideration is, whether the accounts between these parties were open and current from November, 1817, so as to warrant the direction to the jury, that the law inferred a promise to pay within six years.

We have met with no case where accounts, which had been so settled, were held to be open from the beginning, because the balances were carried forward instead of being paid in

---

[1] This doctrine is expressly overruled in *Bass* v. *Bass*, 6 Pick. 362 ; *Bass* v. *Bass*, 8 Pick. 187  See *post*, 113, note 1 ; Revised Stat. c 120, § 5

cash. Nor is it reasonable that it should be so. Lord *Hard-* <span style="float:right">Union Bank</span>
*wicke*, in *Welford* v. *Liddel*, 2 Ves. sen. 400, considered that <span style="float:right">*v.*<br>Knapp.</span>
the exception in the statute relating to merchants' accounts,
" was to prevent dividing the account between merchants,
where it was a running account, when perhaps part might have
begun long before and the account never settled, and perhaps
there might have been dealing and transactions within the time
of the statute." Now it would be just as contrary to the mean-
ing of the statute, to open an account stated, as it would be to
divide a running account. And can it be said that the parties
in this case have not settled ? Are their accounts unliquidated,
as if no statement of them had been made ? A stated account
is an agreement by both parties that all the articles are true.
*Trueman* v. *Hurst*, 1 T. R. 42. And upon an *insimul com-
putassent* the plaintiff is not obliged to give evidence of the
articles. It is sufficient if he prove the account stated. *Bart-
lett* v. *Emery*, 1 T. R. 42, *in notis.* " An account between
partners in trade, after the death of one of them, shall be taken
only from the time the same was last balanced." *Beak* v
*Beak*, 1 Vin. *Account*, (*D. a.*) *pl.* 3.

A stated account was formerly held to be conclusive ; and it
is now so considered, until leave is given to surcharge, falsify,
or open it. That is obtained by a bill in chancery for that pur-
pose. In a bill before Lord *Thurlow* to open an account
which had been settled, he held that the expression of " errors
excepted," did not prevent its being a settled account ; and he
considered the fact that the balance had been carried over, as
showing that the account had been settled. *Johnson* v. *Curtis*,
3 Bro. C. C. 266.

The acknowledgment which is to be inferred from the mutual
and open accounts within six years, should be limited to the
items appearing in the same. If, for example, one of the items
should be a sum of money, being the balance of a former ac-
count settled more than six years before the action, it would be
protected from the operation of the statute by the items which
are within six years.[1] In such a case the law would infer a

---

[1] So if there is no item in the account within six years. *Bass* v. *Bass*, 6
Pick. 362 ; *Mandeville* v. *Wilson*, 5 Cranch, 15 ; *M'Lellan* v. *Crofton*, 6 Greenl.
308 ; *Davis* v. *Smith*, 4 Greenl. 339 ; *Stiles* v. *Donaldson*, 2 Dallas, 264 ;

Union Bank
v.
Knapp.

promise to settle for all the items of the new account. The promise and acknowledgment may be reasonably extended so far ; but not to the various charges and disbursements in former times, from which the balance charged in the open account arose. What of doubt now appears, might in the time of the transaction have been explained by papers, vouchers, or witnesses ; but it would be doing great violence to go behind the account which is open and current, and behind a hundred or more stated accounts, to inquire if at some former period during the trade between the parties, perhaps some twenty or forty years ago, a mistake did not happen in one or more of the settlements, which, if corrected, would make the balance constituting one item in the open account to be either too little, or too great, or on the other side. We do not think the case of *Farrington* v. *Lee* will warrant such a construction ; and if it will, we cannot yield to its authority. Such a decision would lead to great perplexity, vexation, and uncertainty in commercial concerns, and would open a door to endless litigation.[1]

We are therefore of opinion that a new trial should be granted.

---

*Godfrey* v. *Sanders*, 3 Wils. 94.    But see *Coster* v. *Murray*, 5 Johns. Ch. R. 522; *Murray* v. *Coster*, 20 Johns. R. 582; *Ramchander* v. *Hammond*, 2 Johns. R. 200; *Farrington* v. *Lee*, 1 Mod. 269; *Barber* v. *Barber*, 18 Ves. 286; *James* v. *Richmond*, 5 Ohio R. 338; *Rhyn* v. *Vincent*, 1 M·Cord, 150; *Spring* v. *Gray*, 5 Mason, 528.

The law on this head is now settled in this State by statute ; which enacts, that "in all actions of debt or assumpsit, brought to recover the balance, due upon a mutual and open account current, the cause of action shall be deemed to have accrued, at the time of the last item proved in such account." Revised Stat. *c.* 120, § 5.

[1] As to mutual accounts, see further *Franklin* v. *Camp*, 1 Coxe, (New Jers.) 196; *Smith* v. *Ruecastle*, 2 Halsted, 357; *Bennett* v. *Davis*, 1 N. Hamp R. 19; *Stiles* v. *Donaldson*, 2 Yeates, 105; *Coleman* v. *Hutchinson*, 3 Bibb 209 ; *Chamberlain* v. *Cuyler*, 9 Wendell, 126; *M'Lellan* v. *Crofton*, 6 Greenl 308 ; *M'Naughton* v. *Norris*, 1 Haywood, 216 ; *Bond* v. *Ivy*, 7 Cranch, 350 *Gold* v. *Whitcomb*, 14 Pick 188.