1810.

Lessee of HENRY *against* MORGAN and COX.

Lancaster, Saturday, June 2.

2b 497
162 542
2b 497
197 117

THIS was an appeal from the decision of Judge *Yeates* at a Circuit Court for *Dauphin* in *November* 1805.

It was an ejectment for a tract of land, which the plaintiff claimed under a deed with special warranty from one *Christopher Lowman*, who derived title from the executors of *John Meem*, by a deed dated the 14th *January* 1776, *which was never recorded.*

The defendants claimed under a sale made afterwards by the sheriff, by virtue of an execution against a certain *John Kline; but their title was in no manner derived from Meem or his executors.* They were in possession of the land under the will of *Elizabeth Ferguson*, who made them her executors, and authorized them to sell it.

To obviate any objection to the validity of the deed to *Lowman*, from the omitting to record it, the plaintiff offered in evidence the deposition of *Lowman*, to prove that *Cox*, one of the defendants, offered to purchase of him the land in dispute, prior to the time when he first had a concern in it; and that he must therefore have known of the deed to *Lowman.*

To this deposition the defendants made two objections. 1. Because it appeared by the deposition that the witness was interested; for upon being asked on his examination, whether he had agreed to warrant the title to the plaintiff, his answer was " that he had made no such agreement, but " that being asked by Judge *Henry*, before whom the deed " was acknowledged, whether *he would be forthcoming for the* " *title*, he replied, *that it would be right that the deed would* " *be good.*" 2. Because that part of the deposition was not legal evidence, in which *Lowman* said that *Cox* offered to purchase the land of him, inasmuch as *Cox* had then no interest of any kind in the land, nor afterwards, except as executor and trustee under the will of Mrs. *Ferguson;* and of course notice of *Lowman's* title, though brought home to *Cox*, could not affect the parties in interest under the will. But his Honour overruled the objections, and admitted the deposition.

It lies on the party who objects to the competency of a witness on the ground of interest, to shew an interest or supposed interest at the time of the oath being administered. It is not enough that the witness at a former period conceived himself to be interested.

In an ejectment against a *trustee*, it is not competent to give evidence that he had notice of an unrecorded deed before his appointment, because it cannot affect the *cestuy que trust*.

The recording act of 1775 does not make void an unrecorded deed, as against a subsequent purchaser under a title totally unconnected with that deed, but only as against purchasers under the same grantor.

A material question upon the merits was the validity of *Lowman's* deed; and upon this point Judge *Yeates* charged the jury, that the supplement to the recording act, which provides that every deed thereafter, which shall not be recorded within six months after execution, shall be adjudged void against any subsequent purchaser for a valuable consideration, was designed to embrace the case of a person executing a deed to one man, and afterwards executing another deed of the same premises to another man, without notice of the first, in which case the second deed, on being recorded first, would be valid against the first deed, if not recorded in six months. But that it was not the object or meaning of the act to embrace the case of a deed not recorded, where a third person afterwards purchased the same land at sheriff's sale for a valuable consideration and without notice, as the property o a person in no wise connected in title with the grantor in the unrecorded deed; and therefore that the unrecorded deed to *Lowman* was good against the defendants.

The jury found for the plaintiff; and a new trial being moved for upon the ground of misdirection, and the admission of *Lowman's* deposition, the judge refused it, and the defendants appealed.

*Hopkins* for the defendants, and in behalf of a new trial. 1. *Lowman* either was interested in fact, having undertaken at the execution of the deed, to make good the title, or what is sufficient for us, he thought himself interested. If a witness expects to receive any thing even from the generosity of the party for whom he is called, he is incompetent. *M'Veaugh* v. *Goods* (*a*). So if he apprehends himself to be interested, though *stricto jure* he is not, or owns himself to be under an honorary though not under a binding engagement. *Fotheringham* v. *Greenwood* (*b*). He is under a bias, and that is enough to exclude him.

2. The conversation with *Cox* was wholly irrelevant. Its object was no doubt to affect the real parties in interest with notice of *Lowman's* deed, so as to cure the want of registry. But this was not a legal object, because at the time of the conversation and long after, *Cox* had no connexion with the

(*a*) 1 *Dall.* 62.          (*b*) 1 *Stra.* 129.

land, and was nothing but a trustee at the trial. It is impossible that notice to a stranger who afterwards becomes a trustee, can raise an equity against the *cestuy que trust*. *Cox* was not the purchaser, but the executor of the purchaser without notice.

3. The recording act of 1715 merely directs that deeds *may* be recorded. The supplement in 1775, 1 *St. Laws* 703, orders that they *shall* be recorded within six months, or otherwise shall be adjudged void against *any* subsequent purchaser for a valuable consideration. A purchaser at sheriff's sale is within the act. His case is still stronger than that of an ordinary purchaser, because he has not the same means of inquiring into the title, and is compelled to rely much upon the debtor's possession and avowed ownership. He is therefore entitled to a strict construction of the act in his favour. The deed is void by the act. The neglect to record it, was the cause of the purchase from the sheriff, and of several subsequent purchases, because if upon record, it would have been known at least as an interfering title. How can the plaintiff then claim a liberal construction of the law to take him out of its letter, when he has no equity as against the purchaser. That such a deed has no effect, seems to have been the opinion in *Shrider's Lessee* v. *Nargan* (a). The utmost extent to which the court has gone in relieving from the letter, is where actual notice has been brought home to the purchaser.

*Fisher* for the plaintiff. 1. *Lowman* had no interest, because he conveyed merely with special warranty; and the answer to the judge was not a new contract, nor an interpretation of the deed. He did not even think it so, for on his examination he denies an agreement. But whatever he thought at the time of executing the deed, there was not the slightest evidence that he felt an interest at the time of his examination. He did not say that he then thought he was bound to warrant, or that he was interested. To exclude a witness on account of his merely apprehending an interest, the bias must exist at the time of giving his evidence, and it lies on the party who objects, to prove it.

(a) 1 *Dall.* 69.

*Margin:*

1810.

Lessee
of
HENRY
v.
MORGAN.

2. If *Cox* was interested at the time of the trial, his knowledge of the unrecorded deed would affect him. How far it would avail, depended upon his interest, and other circumstances which might appear on the trial. Though he was executor, he might not have been in possession as executor. It was competent, if it could have the least possible effect, either as to the deed, or as to any equity which a want of notice would authorize the defendants to set up.

3. The recording act of 1775 relates only to purchasers under the same person who made the unrecorded deed. What was the mischief? That a purchaser, pursuing the examination of a title, would find it perfect up to the vendor, who for any thing that appeared was undisputed proprietor; while in fact there was an outstanding deed from him, which would sweep off the property. The remedy prescribed was the recording of all future deeds within six months. But how would this benefit a purchaser who was pursuing a distinct title? The record of a deed unconnected with his chain, would never give him notice, because he would never be led to it; nor was he within the mischief of the old law, because that did not consist in the concealment of an opposing title, but in the concealment of a part of the very title under which he was purchasing. The law must therefore be construed with reference to this object. As to sheriff's sales, they stand upon no better footing than sales by the debtor. By the act of 1705 all the defendant's estate is sold, and nothing more. The purchaser takes his place.

TILGHMAN C. J. after stating the case, delivered his opinion as follows:

1. The deed from *Christopher Lowman* to the plaintiff, contains only a special warranty against himself and all persons claiming under him. He was asked on his examination, whether he had agreed to warrant the title of the land in dispute; and his answer was, that he had made no such agreement, but that on being asked by Judge *Henry*, before whom the deed was acknowledged, whether he was to make good the title, he answered that " *it would be right that the deed* " *would be good.*" From hence it is inferred, that he was bound to warrant the title, and therefore interested in the event of this suit. It does not strike me in this light. I do

1810.

Lessee
of
HENRY
*v.*
MORGAN.

not consider the answer to Judge *Henry* as any part of the contract. It does not appear that this question was proposed at the instance, or in the presence of the grantee; and at most it only shews the opinion of the grantor, that the deed which he was about to execute, would bind him to a *general warranty*, in which he was mistaken. But it is objected, that if he *conceived* himself interested, he was not a competent witness, although in fact he might not be interested. Without entering into that question, the objection has no weight with me, because it does not appear that the witness at *the time of his examination*, did conceive that he was interested. He was not asked, whether he thought himself interested at that time. He speaks only of what passed, at the time of the execution of his deed; and it lies on the party, who objects to the competency of a witness, on the ground of *interest*, to shew an interest, or a supposed interest, existing at the time of the oath being administered.

2. I will next consider the objection to the conversation between *Lowman* and *Cox*, one of the defendants. The plaintiff introduced this conversation to shew that the defendants had *notice* of the unrecorded deed from *Meem's* executors to *Lowman*, otherwise he would not have offered to purchase. It has been decided that a purchaser *with notice* of a deed, not recorded, shall be affected by it, and therefore proof of such notice was supposed to be material. The question then will be, whether *Cox's* knowledge of an unrecorded deed, at a time when he had no concern in this land, can have any legal effect on a subsequent purchaser for valuable consideration without notice, who happens to appoint *Cox* one of his executors with power to sell. I do not think that it can. The words of the recording act, are, that the deed shall be *void* against subsequent purchasers for valuable consideration. Now although the law declares the deed to be *void*, yet the court have said, that it is to be so construed, as not to encourage *fraud*. It is against equity, that a man who knows of a purchase for valuable consideration, made by his neighbour, should deprive him of the benefit of that purchase, because the deed was not recorded. The only purpose of recording is to give notice; and if notice is had by any other means, it is sufficient. But in the case before us, the

plaintiff has no principle of equity to urge against the real owners of this land. The defendant *Cox* is but a trustee, an instrument for their benefit. It would be flagrantly unjust then that the representatives of *Elizabeth Ferguson* should be affected by notice to him. I am therefore of opinion, that evidence of such notice was irrelevant, and ought not to have been admitted. But it does not follow from thence, that there should be a new trial. That will depend on the third point; because if the not recording of this deed, is not an objection of which the defendants can avail themselves, then the plaintiff would have been entitled to the verdict, although the evidence of *Cox's* offer to purchase had not been admitted.

3. Although the words of the act of *May* 1775, are general, that deeds not recorded according to the provisions of the act shall be void against subsequent purchasers without notice, yet these general expressions must be construed so as to accomplish the intent of the act, which was to protect innocent purchasers from suffering by the fraud or negligence of those, who had obtained prior conveyances from the *same person*, and omitted to have them recorded. If unrecorded deeds of this kind, were to prevail against subsequent purchasers, no human prudence would be sufficient to guard against imposition; because the title submitted to the examination of the last purchaser, independent of the unrecorded deed, would be perfect. But that is not the case, where a man purchases under a title totally unconnected with the first deed. He is entitled to no protection, because he has placed no faith in the title, to which the unrecorded deed relates. It would be unjust, that one, who has purchased under a bad title, should have his estate confirmed by the mere accident of a deed between two persons, with whom he had no privity or connexion, being unrecorded. It appears clearly to me, that cases of this kind are not within the meaning of the act, nor have I ever heard of its being construed so as to embrace them.

Upon the whole of this case, my opinion is, that the judgment of the Circuit Court be affirmed.

BRACKENRIDGE J. There is no doubt but that in legal language, and in contemplation of law, the purchaser at sheriff's

sale is a purchaser; but whether such a purchaser as is within the contemplation of the act of assembly of 1775 for the recording of deeds, is a question that I do not know has been determined, with this single point in view for the consideration of the court. Be that determination what it may when it occurs, it does not seem necessarily to occur at present; for this is not the case of a purchaser at sheriff's sale, of the estate of a debtor who claims under the plaintiff. It is of the estate of a debtor, between whom and the estate claimed, no privity existed. It was not the lease to the debtor that was sold, but a supposed right in the debtor not derived from the plaintiff.

The question in this case then will be, can the plaintiff who derives title, not prior nor subsequent, but from a source independent of that under which the defendant derives title, be affected by the purchase of a title to which the plaintiff is a stranger. Shall a purchaser from one who has no right, hold against a purchaser from one who has right, because this purchaser from the right owner had not given notice of his purchase? For recording is for the purpose of giving notice, and nothing more. It is necessary from the exception taken that we determine this point. It is the first time that I have heard the point made. It never occurred to me to make it in my own mind; and as the counsel by their argument seem to admit, it would be carrying the curtesy of the law, in favour of a sale by the officers of the law, beyond the protection given to a sale by an owner himself; so that this medium of transfer should operate with the effect of a sale in market overt, and pass the property. The idea is bold, and does credit to the ingenuity of the counsel, but it is untenable. The effect of a sale by the law, cannot go farther than a sale by the individual whose trustee it becomes. The point yet remains to be determined whether it can go as far. I am of opinion that the effect of the recording act in this case has no application. It is not a sale that comes within the meaning of the act; for that, I take it, respects purchasers under the same bargainor or grantor, and no other. I understand the words " *subsequent purchaser*," to relate to purchasers from or under the grantor or bargainor before spoken of, and with regard to whose acknowledgment or proof of handwriting provision had been made.

This is not the first question made in the case, but I have considered it first, because it is the least difficult. On the remaining point, the inclination of my mind has been, that there was something in it, and that the testimony excepted to, ought not to have been admitted. I take it, that the words, or way of thinking, of a person not interested, ought not to be given in evidence against him, when he comes to have an interest, for any other purpose than to shew notice. A purchaser in his own right, could not be affected by what he had said of the title when he had not an interest, further than to the point of notice, and having notice could not affect him purchasing from one who had not notice; nor could the words of a trustee affect him for whom the trust is made, though he were made a party to the suit. The evidence in this case then, as to notice and actual knowledge of the deed by *Cox*, was irrelevant, and could not affect the defendant. But it ought not to have gone to the jury, for it might weigh something with them. Notice was out of the question. The not having notice, would give the defendants no equity. But the jury might be led to think otherwise; and the plaintiff himself seems to have thought, that the having had notice, destroyed some equity, which but for that, the defendants could have set up. They might have had an equity on the ground of the plaintiff's standing by, and suffering them to lay out money, without giving them notice of his claim; though it was not on this ground, that an equity was considered as arising. But the evidence was thought relevant, as shutting the mouth of the defendants, as to any plea of limitation, or time which had elapsed, during an adverse possession without notice.

It then becomes a question, not as to the relevancy of the testimony, but as to the competency of the witness; for had the testimony been irrelevant, even though inadmissible, and such as could not have affected the minds of the jury, it would not seem to be a legal ground for granting a new trial.

The witness examined had been the grantor of the estate. At and before the execution of the deed, he was asked whether he would be forthcoming for the title; and he answered, that " it would be right that the deed would be good." The words " grant, bargain and sell," have been con-

strued not to give a warranty against any thing but the acts of the grantor himself. But the words used, would seem to me to justify the enlarging the construction, according to what appeared to be the understanding of them by the grantor at the time of the execution. Taking his declaration into view, I should think he was forthcoming or answerable, to the extent of a general warranty. It is a fraud in him, after such a declaration of his understanding of the contract, to shelter himself under a construction of the words " grant, bargain and sell," which does not appear to have been in his mind at the time. I believe that the popular understanding has always been, that they gave a warranty, that what a man undertook to sell, was his own. This was the understanding and the law in the case of a personal chattel; and they make no distinction in the case of the sale of real estate.

But it did not appear what was the understanding of the witness on this head, at the time when he gave his testimony. It is to be inferred, that his understanding remained the same, as the contrary does not appear. It lay upon the party adducing the witness, to shew, that his understanding at the time of giving his testimony, did not remain the same, and that his mind had been relieved from that impression of an interest, which had been upon it.

Evidence having been illegally admitted, there must be a new trial; for although on the question of law involved in the issue, a judge would be bound to direct the jury in favour of the plaintiff, the evidence out of the way, yet the jury, the evidence being out of the way, might undertake to decide the law, and would have a right to decide it in a different manner; I mean as to the effect of a want of notice. They could be controlled only by granting a new trial. The admitting the evidence, and saying that, because it could not change the law in favour of the plaintiff, in the court's opinion, though it might in the opinion of the jury, a new trial should not be granted, is taking away from the jury their constitutional right to judge of law and fact, when the law is involved in the fact, or is a conclusion from it, in a general issue, which cannot be done. In this case the jury had a right to judge of the effect of notice; but they had not a right to the evidence, which may have misled them in judging, or at least

1810.

Lessee
of
HENRY
v.
MORGAN.

1810.

Lessee
of
Henry
v.
Morgan.

had an effect upon their judgment. It ought to have been excluded from them.

It would seem to me therefore, that there ought to be a new trial, excluding the evidence; the jury nevertheless to be directed by the judge, that the verdict be the same, for that in the opinion of the court, the admission or exclusion of the testimony, did not affect the law of the case.

New trial refused, and
Judgment affirmed.

---

*Lancaster,*
*Saturday,*
*June 2.*

An agreement by a surety to forbear a suit against his principal, *after he shall have paid the debt of the principal,* is a good consideration to support a promise, although at the time of the agreement, the surety had no cause of action against the principal.

The plaintiff declared, that he informed the defendant he was apprehensive that *he should have to* pay certain bonds in which he was joined with his principal, and *that he would sue* the principal; whereupon, in consideration that the plaintiff *would refrain from suing,* the defendant promised to save him harmless, &c. After verdict, this is to be intended an agreement to forbear suit, *after* he had paid the money.

A promise to forbear in general, is to be understood a total and absolute forbearance.