## HEWES vs. WISWELL.

An entry under a deed not recorded, followed by continual visible occupancy, is only implied notice of a change of property ; but is not equivalent to the registry of the deed.

Therefore where *A.* conveyed to *B.* who entered into possession, but did not cause his deed to be recorded ; and being in possession conveyed to *C,* who recorded his deed, but suffered the land to lie vacant ;—and afterwards *S,* fraudulently induced *B.* to surrender his deed to *A,* who gave a new deed of the same land to *S,* which was recorded ; and *S.* entered and occupied till his death ; and his administrator conveyed to *W,* who had no knowledge either of the fraud of *S,* or of the previous deed from *A.* to *B :*—it was held, in an action by *C.* against *W,* that the possession of *B.* was nothing more than implied notice of his title ; and that *W,* having no knowledge of it, was entitled to hold the land against *C.*

The demandant in a real action, having produced an office-copy of his title-deed, and proved that the original once existed, and was genuine, and that the subscribing witnesses were out of the jurisdiction ; and having made affidavit of the loss of the original ; was permitted to read the copy in evidence.

THIS was a writ of entry in the *per,* for possession of certain lands in *Brewer,* in which the demandant counted on his own seisin, and a disseisin by one *Samuel Stone,* whose administrator conveyed to the tenant. It was tried before *Parris J.* upon the general issue.

At the trial, the demandant offered an office copy of a deed from one *John Curry,* dated *Oct.* 16, 1813, and recorded *Sept.* 1, 1814, conveying to him the demanded premises, with warranty ; to the admission of which the tenant objected. The demandant then proved by the Register of deeds that when he made the record, he must have had before him what appeared to be the original deed, or he should not have recorded it as such. He also proved that the persons named as subscribing witnesses, resided in *Brewer,* where he also resided, and near his dwelling, in *October* 1813 ; and that they had since removed to the State of New York, or to parts unknown. He further proved by two witnesses that within twelve, or at most eighteen months after the date of the deed, they saw and examined what they believed to be the original ; that one of them knew *Curry's* handwriting, and had no doubt of the gen-

uineness of his signature to the deed, which conveyed the same land described in the copy ; that the witness went on the land in company with the demandant, with a view to buying it, and therefore examined the deed more particularly ; but neither of them recollected the names of the witnesses to the deed. The demandant also made affidavit that after diligent search, he could not find the deed, and believed it to be lost, having never seen it since he left it in the registry to be recorded. Hereupon the Judge admitted the copy to be read to the jury.

· The tenant then produced an office copy of a deed dated *July* 4, 1811, acknowledged *June* 26, 1815, and recorded *June* 30, 1815, by which *Francis Carr* conveyed the same premises to *Samuel Stone* in fee with general warranty·; and a deed from *John Wilkins*, administrator on *Stone's* estate, dated *May* 8, 1827, conveying the same to the tenant. And it was admitted that *Wilkins* was duly licensed to convey, and had observed the directions of law therein ; and that *Stone* had entered into the exclusive possession of the premises under his deed, in 1815, and so continued till 1825, when he died.

The demandant then offered testimony to prove that previous to the execution of the deed from *Carr* to *Stone,* and previous to *Oct.* 16, 1813, the demanded premises had been conveyed by *Carr* to *Curry,* by deed duly executed, but not recorded ;—that *Curry* entered under his deed, and was in possession at the time of his conveyance to the demandant ;—that *Stone,* with full knowledge of these conveyances, and for the purpose of overreaching the demandant's title, procured the deed from *Carr* to *Curry,* to be surrendered to *Carr,* and a new deed to be executed from *Carr* to *Stone ;* which, though dated *July* 4, 1811, was proved to have been executed *June* 26, 1815.

For the purpose of proving some of these facts, the demandant offered evidence of the declarations of *Stone,* in his transactions with *Carr* and *Curry* relative to the demanded premises, and the title thereto ; to the admission of which the tenant objected ; but the objection was overruled. The Judge instructed the jury that if they should find that *Stone* knew of the conveyance from *Carr*

to *Curry,* of the possession of the latter under his deed, and of his conveyance to the demandant, previous to the execution of the deed to *Stone ;* and that with knowledge of these facts *Stone* procured the deed from *Carr* to *Curry* to be given up, and the deed from *Carr* to himself to be executed, for the purpose of overreaching and defeating the title of the demandant ; then their verdict ought to be for the demandant. But if they should not be satisfied of these facts, they ought to find for the tenant. And they found for the demandant.

It was contended on the part of the tenant, that as there was no evidence that he had any knowledge of the conduct of *Stone,* nor of any defect in his title, he ought not to be affected by any proof of fraud in *Stone.* But the Judge, for the purpose of bringing this question before the whole Court, ruled otherwise. And the verdict was taken subject to their opinion upon the correctness of his ruling and instructions.

*Sprague* and *Godfrey,* for the tenant, contended strongly against the admissibility of the copy of the deed ; insisting that here was no sufficient proof of the existence of the original, much less that the paper offered was a true copy of it. And they argued that sufficient diligence had not been shown to procure the testimony of the subscribing witnesses. 1 *Stark. Ev.* 327, 330, 337 ; *Bull. N. P.* 256 ; *Kimball v. Morrell,* 4. *Greenl.* 368. To the other point they cited *Connecticut v. Bradish,* 14 *Mass.* 296 ; *Trull v. Bigelow,* 16 *Mass.* 406.

*W. D. Williamson,* for the demandant, argued that by the deed of *Carr* to *Curry* the grantor parted with his seisin, and had nothing to convey to *Stone,* who therefore derived no title by the fraud he practised, and of course could convey none to the tenant.

MELLEN C. J. delivered the opinion of the Court.

We are all satisfied that the preliminary proof introduced by the demandant, respecting the existence and loss of the original deed from *John Curry* to him, was sufficient to authorise the admission of the copy, as decided by the Judge who presided at the trial.

The remaining question as to the effect of the deed from the administrator of *Stone* to the tenant, viewed in connexion with some peculiar circumstances, has occasioned some hesitation ; but upon a careful examination of facts and principles, we are all fully agreed in the opinion to be delivered.

The first section of *ch.* 36 of the revised statutes, contains this clause : " And no bargain, sale, mortgage or other conveyance, in fee simple, fee-tail or for term of life, or any lease for more than seven years from the making thereof, of any lands, tenements or hereditaments within this State, shall be good and effectual to hold such lands, tenements, or hereditaments, against any other person or persons, but the grantor or grantors and their heirs only ; unless such deed or deeds thereof be acknowledged and recorded in manner aforesaid"—that is—recorded at full length in the registry of deeds in the county where such real estate may be situate. The foregoing is a copy of a provision in the act of 1783, on the same subject, now in force in the Commonwealth of Massachusetts. The provincial statute of the 9th of *William* 3d. *ch.* 7, contains a similar provision, with some little variation in its phraseology, but not in principle.

The registry of a deed is the only statute mode of giving notice of the change of property by means of the conveyance : and it is also the only statute mode of giving effect and operation to it, as to any person or persons, except against the grantor and his heirs. The reason why the grantor was excepted, undoubtedly must have been, that he necessarily must have had knowledge of the existence and nature of the conveyance from the very fact of his having made it ; and his heirs were excepted, because, as claiming under him, they are bound by his acts and his knowledge. This exception shows what was the general object in the view of successive legislatures, in requiring the registry of deeds in the manner before mentioned. It was to give public notice that the grantor had conveyed to the grantee the estate described in the deed of conveyance, so as to secure after purchasers of the same property from the same grantor or his heirs, from being deceived and defrauded. But still it has for a long series of years been the uniform construction of the

13

statute, and the settled law of the land, that if B. purchases a piece of land of A. but neglects to place his deed on record, and C, knowing of the purchase of B, procures a deed of the same land from A, and causes it to be registered ; still he shall not hold the land against B, for C's purchase was a fraud on B.  This principle and this construction of the statute do not, in any degree .militate against its design and spirit.  On this point there is no difference of opinion in the community.  But if C. had no knowledge of B's purchase, he, by causing his deed to be registered, would hold the land against B, by the express language of the statute.  So if C, the fraudulent purchaser from A, sells the land to D, for a valuable consideration, he not having any knowledge of the existence of the unrecorded deed from A, to B, D shall hold the land, though C, his grantor, could not.  In the case stated, D perfects his title by the record of his deed ; and B, not having placed his deed on record, cannot, by the express terms of the statute, in such case, hold against any one but his grantor and his heirs ; nor, by the established construction of it, against any one else but him who had notice of his purchase from A.

Though a deed is not recorded, still other persons besides the grantor and grantee, may have notice of its existence and its contents.  This knowledge may be either express or implied.  He who relies upon proving express knowledge of the fact, must prove it by clear and unequivocal evidence, and not by floating rumors or loose conversation  And implied notice must be proved by those circumstances from which the inference of knowledge may be clearly made, and at least appear natural and necessary.  The learned Judge *Trowbridge*, 3 *Mass.* 575, lays down the principle that an entry under a deed " being followed by a visible improvement of the land and taking of the profits thereof is such an evidence of an alteration of the property as will amount to implied notice."  This is true, but in many cases there may be no evidence that the entry was made under a deed ; though the improvement and possession may be distinct and exclusive.  A person may be in possession under a lease ; or the fee may be conveyed by the lessor to the lessee in possession, and thus no change of possession follows.  In

such circumstances, a continuance of the open possession would seem to give little or no notice to strangers of the existence of the conveyance : at least the facts could only furnish evidence from which a jury might or might not infer notice, according to the particular nature of those facts.

An entry and open and exclusive possession and perception of profits under an unregistered deed, has often been considered and pronounced as equivalent to the registry of the deed. This cannot be correct ; the language is too strong, and is, on that very account, deceptive. In the above cited passage from the reading of Judge *Trowbridge*, such improvement and perception of profits is only pronounced to be implied notice ; and it never amounts to any thing beyond that. If it were equivalent to the registry of a deed, then it would follow, as a legal consequence, that a fraudulent purchaser, with notice of a prior unregistered deed, and his innocent grantee without such notice, who had paid a full consideration and placed his deed on record, would both stand on the same ground, and neither of them could hold the land against the first purchaser, who entered under his deed and openly possessed and received the profits without recording it. But such a consequence is utterly inadmissible ; for it is unquestioned law, that in such case the innocent purchaser could hold the title against every one, as has been before stated in this opinion. Such entry, exclusive possession and taking of the profits, we repeat, is only implied notice of a change of property and transfer of it from the former owner to the person openly possessing it ; from which notice, fraud in a second purchaser is presumed, and by which it may be proved against him, so as to defeat the title of him who has been guilty of it ; but beyond this, neither the words, nor the long established construction of the statute have ever been extended. An unrecorded deed is good against a second purchaser with notice of it, though his deed is recorded ; because, in consistency with the soundest principles of morality, the negligence of the first purchaser in omitting the registry of his deed, may and ought to be overlooked, rather than that the fraud of the second purchaser should prove successful. And an innocent grantee of a fraudulent purchaser shall hold against the first

purchaser; for though neither of them has been guilty of any immoral conduct, yet one of them must suffer a loss; and it is more proper and just that he who has been regardless of his own interest, so far as not to place his deed on record, should sustain the loss, than the innocent purchaser who has not been thus negligent. In such a case justice requires the application of this principle of the common law; though, without its application, the provision of the statute itself is a sufficient protection of his title. It is believed that the foregoing principles and reasoning are sustained by the following authorities. Judge *Trowbridge's Reading*, 3 *Mass.* 573; *Marshall v. Fisk*, 6 *Mass.* 24; *Davis v. Blunt*, Ib. 68; *Farnsworth v. Child*, 4 *Mass.* 637; *Prescott v. Heard*, 10 *Mass.* 60; *Norcross v. Widgery*, 2 *Mass.* 506; *Connecticut v. Braddish*, 14 *Mass.* 296; *Bigelow v. Trull*, 16 *Mass.* 406; *Priest v. Rice*, 1 *Pick.* 164; *McMechan v. Griffith*, 3 *Pick.* 149; *Cushman v. Hurd*, 4 *Pick.* 253; *Jackson v. Burgot*, 10 *Johns.* 457; *Jackson v. Given*, 8 *Johns.* 107.

We will now attend to some of the facts, having an important influence in the decision. The deed from *Carr* to *Curry* was never registered; and though *Curry* went into possession under it and was in possession at the time of his conveyance to the demandant in *October* 1813, yet it does not appear that any one occupied the land from that time, until *Stone* entered under his deed in 1815; and it was admitted at the argument, that during that interval, the land was wholly unoccupied and unprotected; though the demandant's deed from *Curry* was recorded in *September* 1814. It does not appear, nor is it pretended, that the tenant at the time of his purchase from the administrator, had any knowledge of the conduct of *Stone* in procuring his deed from *Carr* or the defect in *Stone's* title, or of the deed to, or possession of the land by *Curry* while he was the owner of it. Upon these facts the Judge instructed the jury that if they believed that *Stone* had knowledge of the above mentioned particulars, when he obtained his deed from *Carr*, the demandant was entitled to a verdict. By this instruction, a *scienter* on the part of the tenant, was deemed of no importance. But, for the reasons and on the principles above stated, inasmuch as the

tenant was a fair purchaser for a valuable consideration, wholly innocent and unaffected by notice of the fraudulent proceedings and defective title of *Stone,* he is entitled to hold the land against the demandant, though *Stone* himself could not have held it. We are all of opinion that the instructions of the Judge cannot be sanctioned.

*Verdict set aside and new trial granted.*