Kent, Ch. J.
delivered the opinion of the hourh The points ■submitted to the court, on the part of the defendant, in opposition to the plaintiff’s claim of title are,
1. That the deed first registered must, at all events, prevail against an unregistered deed; the statute having declared the latter, as against the former, fraudulent and void.
2. That the defendant was a bona fide purchaser without notice.
3. That if he had notice, the lessor of the plaintiff cannot avail himself of that fact, in a court of law.
■ Neither of these objections appear to be well founded-
*466 1. The facts in the case establish the conclusion that the de» fendant and every other person, through whom he derived title, had, at the time of their purchase, actual notice of the prior conveyance to Irwin Sr Gilbert. The purchase of Tiffany had every appearance of a gross fraud. Conkling had, as early as 1796, sold the lot to Irwin, for the consideration of 480Z. or 1,200 dollars ; and in 1804, he gave a quitclaim deed, of the same lot, to Tiffa~ ny, for the consideration of 100 dollars. It appears that Tiffany was a hired man in the service of Irwin, and the purchase was effected at the instance of Irwin, for the avowed purpose of defeating the operation of a deed he had previously given to the lessor of the plaintiff. Irwin furnished the money, and Tiffany was only a nominal trustee to Irwin, and the instrument of his fraud. The next conveyance in the chain of the defendant’s title, is the deed from Tiffany to Murray; but as Murray purchased at the. instance of Irwin, and gave no consideration, he was not a purchaser for a valuable consideration within the act, and was also a mere nominal trustee for Irwin. The next conveyance was from Murray to Hunt, from whom the defendant purchased. While Hunt was in negotiation with Murray for the purchase of the lot, he was informed that Gilbert, the lessor, claimed the lot, and had title, and was cautioned against purchasing. He, notwithstanding, purchased, and took a quitclaim deed, and gave a trifling consideration. And when the defendant purchased from Hunt, he was informed by a witness, that he had a letter from the lessor of the plaintiff, stating particulars, and informing him that he had.a good title without defect, except that his deed had not been recorded in season. The contents of this letter were stated to the defendant, and he was cautioned against buying of Hunt, as Gilbert was the true owner.
It ought further to be observed, that the deed from Irwin to Gilbert was recorded as early as 1805, and before even Tiffany had undertaken to sell to Murray.
These facts put the point of actual notice beyond all controversy ; and the only question is, whether these several conveyances, under which the defendant claims, and which are so infected with fraud, are to be sustained in a court of law, merely because he can show a priority of registry.
2. We have always taken it for granted, without any formal discussion, that notice would supersede the prior registry, even in *467 a court of law. But as the point is now, for the first time, ciisiinctly raised in this court, it may merit some consideration.
It may be assumed as a settled principle in the English law, that where a subsequent purchaser, whose deed is registered, had notice, at the time of his purchase, of a prior registered deed, the prior deed shall have the preference; for the object of the register acts is to give notice to subsequent purchasers, and in the case stated, the object of the act is answered, and his purchase under such circumstances is a fraud. It is considered as done malafide, by assisting the original vendor to defraud the prior vendee; and the courts will not suffer a statute made to prevent fraud, to be a protection to fraud. It may often be a question, what facts or circumstances will amount to notice sufficient to charge the party; but if the fact of notice be once made out, there is no doubt in the books, but that as against such prior deed, the subsequent registered conveyance is to be adjudged fraudulent and void. This principle I apprehend to be equally just and solid, and it cannot but excite surprise that the French ordinance of 1747, compiled under the auspices of so excellent, pure, and distinguished a magistrate as Chancellor D’Aguesseau, will admit of nothing, not even of the most actual and direct notice, to countervail the prior registry. (Butler’s Note, 249. s. 11. to Co. Litt. lib. 3.*) M. Pothier does not hesitate, however, to question the policy and equity of the ordinance. (Traite des Substitutions, s. 1. 6.) The foundation of the English doctrine is the fraud of the second purchase under a knowledge of the first; and when that appears, (as it will in almost all cases where the second purchase is made with the knowledge of the first, and with a view to defeat it,) it cannot consist with the honour of the law, or with the wisdom of the administration of justice, that the fraud should remain triumphant.
’ An unregistered deed is, in no cáse, void ; it is always good as against the grantor and his heirs; and the question here is, between a valid and fraudulent deed. The case of Le Neve v. Le Neve was decided by Lord Hardrvicke in 1747, and it contains the fullest illustration, and the most decisive vindication, of the rule. (3 Atk. 646. 1 Ves. 64. Amb. 436. S. C.) Ee says that the rule was first applied to the statute of 27 Hen. VIII. far the enrolment of bargains and sales ; and that the construction had been uniform, that if a subsequent bargainee had notice of a prior bargain and sale, he was equally affected with the notice, as if the *468 prior purchase had been a conveyance by feoffment. When the register acts were introduced, the same rule of construction was applied to them; and to show the absolute necessity of the constraction, Lord Hardivicke supposes the case of a purchaser of lands in a register county, employing an attorney to register the conveyance, who, neglecting to do it, buys the estate himself, and registers his own conveyance; and he then asks, shall this be allowed to prevail ? To allow the statute to have this effect, would be permitting it to be made the instrument of fraud, and would shock the moral sense of mankind. The same rule, as to notice# must be applied to cases arising under our acts, relative to the military bounty lands. The object of the registry, under these acts, was not only to detect fraud, but “ to prevent frauds in future and the effect of the first registry is declared in the very terms used in the statute of 7 Ann. c. 20. in cases arising under these acts, it has always been assumed as a conceded point, that notice of the prior deed would supersede the effect of the prior registry. (Jackson, ex dem. Potter, v. Hubbard, 1 Caines’ Rep. 32. Jackson, ex dem. Humphrey, v. Given, 8 Johns. Rep. 137.)
3. The only point that remains to be considered in this case is, whether the question of notice is not exclusively of equity cognisance.
The decisions have come from the court of chancery, but whenever the point has occurred to the judges of the courts of common law, they have always recognised the existence and solidity of the rule. (Lord Mansfield, in 1 Burr. 474. and Lord Kenyon, in Peake’s N. P. 190, 191.) And if the question of notice be a question of construction of the statute, and not merely of a trust or equity binding on the conscience, the cognisance of it must belong equally to a court of law. The design of the act was to give notice, by means of the registry, and thereby prevent imposition, mistake, and fraud. The court of exchequer, in Cheval v. Nichols, (1 Stra. 664.) admitted that the statute only intended to give such notice as would prevent fraud, and that the statute never intended io relieve a purchaser with notice, though the first deed was not registered. It is, therefore, a question on the interpretation of the registry ads, and upon every sound principle, courts of common law have cognisance of the case. - -* Courts of law and equity are equally bound to give statutes a sound interpretation, in prevention of the mischief, and are equally hound to carry the intention into effect: and courts of law have *469 concurrent jurisdiction in all cases of fraud/ Fraud will invalidate, in a court of law as well as in a courlji of equity, and annul every contract and every conveyance infected with it. The ground of the interference of the courts in these cases of notice, is the fraud. In Fermor’s Case (3 Co. 77.) it was resolved that a fine levied hyt fraud was not binding, and that“ such fraudulent estate was as no estate in judgment of law,” and it was declared that all acts and deeds, judicial as well as extrajudicial, if mixed with fraud, were void. When the statute says that every deed not recorded shall be adjudged fraudulent and void against a subsequent purchaser for valuable consideration, whose deed shall be recorded, it undoubtedly meant a subsequent purchaser in good faith, and who did not purchase with a fraudulent intent. A subsequent purchaser, mala fide, was not within the purview of the^act, and not intended to be protected; for the statute never meant to give sanction to fraud, or to render a fraudulent act legal. That is impossible. Consequently, in the case of a second purchaser with notice, no estate passes to him by the deed. “ Such fraudulent estate iras no estate in judgment of law.”
Judgment for the plaintiff.

 Folio edit. 290. b. Note (1.)