JAMES ROGERS, plaintiff in error, *v.* RICHARD H. W. BRENT, defendant in error.

*Error to Lee.*

A judgment of the Circuit Court is a lien upon land held by the defendant in the judgment, at the time of its rendition, under a certificate of entry or purchase from the United States, and such lien is not affected by a subsequent assignment of his certificate by the defendant and the issuing of a Patent from the government to the assignee.

A. entered a tract of land in the United States Land Office; while he held the land under his certificate of entry, a judgment was recovered against him in the Circuit Court, execution issued, the land sold on the execution, and a deed, in due time, made by the sheriff; subsequent to the sale, and before the time of redemption expired, A. assigned his certificate of entry to B. who received a Patent for the land from the Government, and then conveyed to C.: *Held*, in an action of ejectment brought by C., that the sheriff's deed related back to the judgment and operated a complete transfer of A's title; that the assignment from A. to B. only passed the right of redemption; that this right not having been exercised, the assignment to B. was wholly void, and the Patent issued on such assignment fraudulent, and to be treated in this action as conveying no title to the patentee as againt the claimant under the sheriff's deed, and that C. could not recover in the ejectment.

A title derived from the Government is to be adjudged by the same rules of law as one derived from an individual owning the fee, and when the Government is made the instrument of fraud in granting title, Courts will interfere to protect the injured party as readily as in cases of fraud between individuals.

The Common Law Courts may entertain jurisdiction of questions of fraud, and a conveyance, whether by deed from an individual, or by Patent from the Government, although executed with all the forms of law, when obtained in fraud of the rights of others, may, in an action of ejectment, be disregarded by the Court as void, at the instance of the injured party or those holding under him.

No statute should be so construed as to protect a fraud; and the fourth section of chapter forty of the Revised Statutes, which enacts that a Patent for land shall be deemed and considered a better legal, and paramount title in the patentee, his heirs, or assigns, than the official certificate of any Register of a Land Office of the United States of the entry or purchase of the same land, does not apply to a Patent obtained by a fraud on the holder of the certificate, in a suit with such holder or his assigns.

It is the right of a party, when he offers evidence in its proper order, which proves, or tends to prove any necessary fact in the case, to have it go to the jury: for the reasonable presumption is, that it will be followed by such other proof as is necessary for its proper connection; and if it is not, it then becomes irrelevant, and, if desired, may be withdrawn from the jury.

EJECTMENT, brought by the defendant in error against the plaintiff in error, and tried at the August term, 1848, of the Lee Circuit Court, before the Hon. Thos. C. Browne and a jury.

The plaintiff below, to show title, gave in evidence a Patent from the United States to Jesse Bowman, assignee of Samuel M. Bowman, for the premises in question, and a deed from Jesse Bowman and Anna Bowman to himself for the same lands.

The defendant below then offered in evidence a certificate of George Mixter, Register of the Land Office at Dixon, Illinois, dated the 20th of August, 1847, that Samuel M. Bowman, on the 19th of May, 1840, purchased the lands in suit from the United States and made full payment for the same at that time; and defendant below stated that he expected to prove, that the certificates of sale on which the Patents issued, were held by said Samuel M. Bowman and not assigned by him until the 5th of April, 1843; to the reception and reading of which certificate the plaintiff below objected, which objection was sustained by the Court, and the certificate excluded, to which decision the defendant below excepted.

The defendant below then offered in evidence a certified copy of the assignment (of the duplicates upon which the Patents aforesaid were issued) from Samuel M. Bowman to Jesse Bowman, dated the 5th of April, 1843, which copy was duly certified by Richard M. Young, Commissioner of the General Land Office, under the seal of the General Land Office; to the reception of which, plaintiff below objected, and his objection was sustained, and the said certificate and copy of assignment excluded; to which decision the defendant below excepted.

The defendant below then offered in evidence the record of a judgment in said Lee County Circuit Court, rendered September 12th, 1842, in favor of H. F. Rodney and William Rodney, and against Samuel M. Bowman and Charles A. Lane, partners, &c., to the reception of which record the plaintiff below objected, and his objection was sustained by

the Court, and the record excluded, to which decision defendant below excepted.

The defendant below also offered in evidence an execution issued on said judgment against Bowman & Lane, under the seal of said Lee County Circuit Court, dated the 28th of September, 1842, with the sheriff's return thereon, showing a levy, appraisement, and sale of the premises in question (the sale under date of December 26th, 1842) to E. Southwick, plaintiff's attorney, and also a sheriff's deed to said lands, under said sale, dated December 17, 1844, all of which papers were separately offered, objected to by the plaintiff below, and excluded by the Court; to which several decisions the defendant below excepted.

The jury found a verdict for the plaintiff, on which the Court rendered judgment, and the defendant sued out his writ of error.

The plaintiff in error assigned for errors the several decisions of the Circuit Court in excluding the evidence recited above.

*I. O. Glover & B. C. Cook*, for the plaintiff in error.

The legal persumption that a deed was executed on the day it bears date, never obtains when the deed is proved to have been in the hands of the grantor subsequent to its date. 1 Denio, 323.

Delivery is essential to make a deed operative. *Bryan* v. *Wash*, 2 Gilm. 565; *Ferguson* v. *Miles*, 3 do. 364; *Hulick* v. *Scovil*, 4 do. 159.

A title acquired subsequent to the commencement of the action is not sufficient, for in such case the defendant does not, at the commencement of the suit, wrongfully withhold the possession as averred in the declaration.

The certificate of the Register was evidence of title in Saumel M. Bowman at the time of the sale of the land on the judgment. Rev. Stat. 232; *Delaunay* v. *Burnett*, 4 Gilm. 454.

The case of *McConnell* v. *Wilcox* only decides that a certificate is not evidence as between the United States and a third person.

There is a distinction in this case. Here, the question is not as against a conflicting Patent, or as against the United States, but as to what constitutes the first transfer of title from the purchaser.

To say that a person who has purchased lands of the United States may, after judgments are rendered against him and the land sold on execution, assign the duplicate, and defeat the purchase, would open the door to enormous fraud.

Lands are taxed from entry and before they are patented. Is not a judgment for taxes a lien?

The assignee of the duplicate was chargeable with notice of the judgment.

The United States, after sale and before the Patent issues, is a trustee for the purchaser or his assignees, and the law may execute the trust and convert the equitable into a legal title.

*E. S. Leland,* for the defendants in error.

The certificate of the Commissioner of the General Land Office is not sufficient to prove when the certificate of entry was assigned The certificate supposed to be assigned, or a certified copy thereof, should have been produced, in order that the Court might see whether the assignment of said certificate is valid. It should appear from the certificate that the paper, of which a·copy is given, is a paper belonging to the Office of the Commissioner. 2 Story's U. S. Laws, 1238.

There is a variance between the judgment and the execution offered in evidence by defendant; also between the sheriff's deed and the judgment. *Den* v. *Farlee,* 7 Halst. 326; *same* v. *Morse,* ib. 331; *same* v. *Wright,* 1 Peters' C. C. R. 66.

The defendant below was not injured by the exclusion of his offered evidence, because there is no evidence in this case, nor was any offered, to connect him with Southwick's title.

An action of ejectment tries the legal title. An equity can not prevail against the legal title in ejectment. The interest purchased at the sheriff's sale can be only an equity. *Bagnell* v. *Broderich,* 13 Peters, 436 ; *Wilcox* v. *Jackson,* ib. 498 ; Acts of 1838-9, page 196.

The Opinion of the Court was delivered by

CATON, J.    This was an action of ejectment; and upon the trial in the Circuit Court the plaintiff below introduced a Patent from the United States, for the premises in question, to Jesse Bowman as assignee of Samuel M. Bowman, dated on the 1st of May, 1843, which was followed by a deed from Jesse Bowman to Brent, dated December 1st, 1846. The plaintiff then proved the possession of the defendant, and closed his case.

The defendant then offered to prove by the Register's certificate, that the land in controversy was entered at the Land Office by Samuel M. Bowman on the 19th of May, 1840, and that he assigned his certificate of purchase to Jesse Bowman on the 5th of April, 1843. He also offered the record of a judgment in the Lee Circuit Court, against Samuel M. Bowman, which was entered on the 12th day of September, 1842, upon which an execution was issued on the 28th of the same month, by virtue of which the sheriff levied on the premises in question, and advertised and sold them according to law to Southwick, who obtained a sheriff's deed on the 17th of December, 1844. As each portion of this evidence was offered it was objected to, and ruled out by the Court, and an exception taken. A verdict and judgment were entered for the plaintiff.

It is first necessary to inquire what rights were acquired under the judgment and sheriff's sale and conveyance, as against the patentee and his grantee, and then whether these rights could be asserted and vindicated in this action of ejectment.

By section one, chapter fifty seven, of the Revised Statutes, "all interest of the defendant or any person to his use, held or claimed by virtue of any deed, bond, covenant or otherwise for a conveyance, or as mortgagee or mortgagor of lands in fee, for life, or for years," are made subject to execution. This language is sufficiently comprehensive to embrace the interest of a purchaser of Government land while he holds the certificate of purchase, and before the Patent issues. But that no doubt might be left on the sub-

ject, the third section provides, that "the legal holder or holders by record of any certificate of purchase of lands from the United States, shall be deemed to be within the true intent and meaning of this chapter." At the time of the recovery of this judgment, the issuing of the execution, and of the levy and sale under it, Samuel M. Bowman was the legal holder of record, of the certificate of purchase for the premises, as the assignment to Jesse Bowman was not made till the 5th of April, 1843, about seven months after the judgment was recovered. All of the interest which Samuel M. Bowman ever had in the land, whether legal or equitable, passed to Southwick by the sale under the excution and the sheriff's deed, as completely as if the transfer had been by voluntary conveyance, and Southwick was as much entitled to a Patent in the one case as he would have been in the other, and such is the effect given to these judicial transfers by the General Government. See Opinion of U. S. Att'y Gen'l, Pub. Land Laws, part 2d page 3.

The nature and extent of the interest of a purchaser under a certificate were before the Supreme Court of the United States, in the case of *Carroll* v. *Safford*, 3 Howard, 441; as well as the right of the State laws to control and dispose of that interest. In that case the Court said: "When the land was purchased and paid for, it was no longer the property of the United States, but of the purchaser. He held for it a final certificate which could no more be canceled by the United States, than a Patent. It is true, if the land had been previously sold by the United States, or reserved from sale, the certificate or Patent might be recalled by the United States as having been issued through mistake. In this respect there is no difference between the certificate holder and the patentee." The right of the State authorities, under the State laws, to dispose of lands absolutely, thus situated, was fully sustained in that case.

At the time of the assignment by Samuel M. Bowman, he had no interest in the premises except the right of redemption, of which the assignee never availed himself, and the sheriff's deed must relate back to the time of the judgment, which was notice to all the world of everything which

Rogers *v.* Brent.

was legally done under it. The rights acquired by the sheriff's deed stand upon as high ground as if the Patent had been issued to Jesse Bowman without any assignment at all; for as to those rights the assignment was utterly void. The assignor had no interest which he could assign except the right of redemption, and the assignee was bound to know this. A Patent issued under a void assignment could convey no more right than one issued upon a second sale when the first was valid, and in such a case, the Supreme Court of the United States has said that the Patent conveys no title. In the case already referred to, on page 461, the Court said: "Now lands which have been sold by the United States can in no sense be called the property of the United States. They are no more the property of the Unites States, than lands patented. So far as the rights of the purchaser are concerned they are protected under the patent-certificate as fully as under the Patent. Suppose the officers of the Government had sold a tract of land, received the purchase money, and issued the patent-certificate, can it be contended that they could sell it again and convey a good title? They could no more do this than they could sell land a second time which had been previously patented. When sold, the Government, until the Patent shall issue, holds the mere legal title to the land in trust for the purchaser."

Suppose this land had been regularly assessed for taxes as the property of Samuel M. Bowman, before he assigned to Jesse Bowman, and sold for non-payment of the taxes, the redemption expired, and a tax deed executed, would it be contended that the Patent subsequently issued to the assignee would defeat the tax deed, in a Court of Law? And yet it would be difficult to show how the tax deed would convey any higher title or greater interest than the sheriff's deed. Suppose the Patent had been issued to Samuel M. instead of Jesse Bowman, would it be contended that the Court might not go behind that Patent, and protect the rights acquired under the sheriff's sale? And yet Jesse

being chargeable with notice, acquired no better title under the Patent than Samuel M. would have acquired, had it been issued to him.

The Commissioner of the General Land Office is not a judicial officer, and his determination concludes the rights of no one. 1 McLane, 535. If he issues a Patent to a person not entitled to it, either the State or Federal tribunals may inquire and determine who has the better right. This is no "interference with the primary disposition of the soil by Congress." 3 Howard's (U. S.) R. 461.

A title derived from the Government is no better than one derived from an individual owning the fee, and must be adjudged by the same rules of law; and a fraud may as well be perpetrated in obtaining a title from the Government as from an individual, and it is the duty of the Court to protect the injured party against the one as well as the other. A fee simple title is the same, come from whatever source it may, and a fraud is none the less a fraud because the officers of the Government are imposed upon and made the instruments of its perpetration.

That a Court of Equity would treat the holder of the Patent title as a trustee, and compel him to convey to the one entitled to it under the sheriff's sale, was hardly denied upon the argument, and the only serious question made is, whether a Court of Law has the power to investigate this question of fraud and protect the party against it.

The jurisdiction of the two Courts is almost equal in their right to try and determine questions of fraud, but their means of proving the fraud are not equal, and their mode of granting relief is widely different. The superior facilities of a Court of Equity to investigate the question and to grant the relief, render it frequently advisable to resort to that Court at once, but that is no reason why the party may not avail himself of such relief as a Court of Law can give him when he can prove the fraud. Courts of Equity, in cases of fraud, frequently affirm the fraudulent act, and compel the party who has fraudulently obtained an apparent right, to

Rogers *v.* Brent.

transfer it to the person who is in equity entitled to it, while the Court of Law, for want of such a power, will treat the fraudulent act as a nullity—as if not done at all. The books abound with cases where, in actions of ejectment, an apparently good title is treated as a nullity, because it was obtained by fraud. Hardly a day passes but the Common Law Courts are inquiring whether the conveyance relied upon was not made to defraud creditors, and when the fraud is established, the deed is held to be void. This doctrine and practice are too familiar to require a reference for their support, and yet this record presents in principle just such a case. Surely the rights of the purchaser at the sheriff's sale are no worse than they would have been, had the fraudulent act been done before the sale, or before the judgment. Had Samuel M. Bowman purchased of an individual instead of the Government, and taken a bond for a deed, his interest, under our statute, would have been subject to sale under the execution, and it would hardly be denied that a Court of Law would treat as a nullity, a deed to the assignee of Samuel, when it was established that the assignment was made and the deed obtained to defraud creditors, or to defeat a title previously obtained by a sale under an execution against Samuel. The case supposed is parallel with the one before us. Both would be treatd alike in a Court of Equity, and they must share the same fate in a Court of Law.

But Courts of Law are not limited in their inquiries into fraudulent conveyances, to cases where the title was obtained to defraud creditors, but their jurisdiction on this point seems to be almost universal. Courts of Law, as well as Courts of Equity, have even gone so far as to break in upon and disregard the express provisions of legislative Acts giving a preference to certain conveyances, as well as the conveyances themselves, where the deed and the statute are attempted to be used for fraudulent purposes. Such is the case when a junior deed, which has been recorded, and thus, by the terms of the recording Act, is entitled to a preference over a senior unrecorded deed, is set up in opposition to the latter, the grantee in the junior deed having

notice of the prior conveyance. *Jackson* v. *Burgott*, 10 Johns. 457, was an action of ejectment, and the defendant relied upon a deed dated subsequent to that of the plaintiff, but of prior registry, and one of the points made by the defendant's counsel, was, "That if he had notice, the lessor of the plaintiff cannot avail himself of that fact in a Court of Law;" but it was held, that the subsequent purchaser, having had notice of the prior conveyance, the deed to him was fraudulent and void, and that a Court of Law had concurrent jurisdiction with a Court of Equity to try the question of fraud, and that it would disregard the fraudulent deed. Chief Justice Kent said: "The foundation of the English doctrine is the fraud of a second purchase under a knowledge of the first, and when that appears, (as it will in almost all cases where the second purchase is made with a knowledge of the first, and with a view to defeat it,) it cannot consist with the honor of the law, or with the wisdom of the administration of justice, that the fraud should remain triumphant." Again, he says, "and Courts of Law have concurrent jurisdiction in all cases of fraud. Fraud will invalidate in a Court of Law as well as in a Court of Equity, and annul every contract and every conveyance infected with it."

Upon a like state of facts in the case of *Morris* v. *Gill*, 1 Chip. 49, Chief Justice Chipman held the same rule, and said "That it would be mischievous to allow such fraudulent acts to prevail in a Court of Law, only to turn the parties over to a Court of Equity, where they would be immediately set aside. Fraud, if fully proved, invalidates every transaction, as well at Law as in Equity." Neither the recording Acts of England, of New York, or Vermont, make any exception where the subsequent recorded deed is obtained *mala fide*, but, by their terms, give all such junior deeds a preference over a prior unregistered conveyance. Still, we see that Courts of Law will inquire into the fraud, and refuse to give effect either to the statute or the deed, where the design is to perpetrate a fraud. Rarely will the Courts of Law be called upon to extend the doctrine further than this.

In order to show the universality of this rule, and the ex-

Rogers *v.* Brent.

tent to which Courts of Law will investigate questions of fraud, we will refer to two cases of another class, where it was admitted by the Court that there was no fraud in fact or intended fraud, but merely a fraud in law, for which the deeds were only voidable, and not absolutely void. *Den* v. *Mc-Knight*, 6 Halst. 385, was an action of ejectment. The plaintiffs claimed the premises as heirs at law of Thomas Moore, deceased, and the defendant claimed under a deed from Haines, executor of Burton, who derived title through Abbott, the grantee of Burton, who had conveyed the premises as executor of the plaintiffs' ancestor. The Court found that the conveyances from Burton, as executor, to Abbott, and from Abbott back to Burton, were merely colorable, and that the sale was in reality by the executor to himself, and hence in law fraudulent. In speaking of sales made by trustees to themselves, the Court remarks : "They are, I think, voidable, not void. They may be avoided by the *cestuis que trust*, and their heirs, from whose ratification, they may, even as to themselves, become valid. Strangers or third persons cannot impeach or question them." Upon the power of the Court to take cognizance of the question, the Court says : "The lessors of the plaintiff may avail themselves of the objection to the validity of these deeds, in the present action of ejectment, and are not obliged, in order to impugn them, to resort to the Court of Chancery."

The same question arose upon a similar state of facts, except that the sale was by an administrator under an order of the Court, in the case of *Den* v. *Hammel*, 4 Harr. 73. The Court there said: "The next question is, whether a sale and conveyance under the decree, if fraudulently made by the administrator, can be avoided in a Court of Law, or whether relief can be had only in a Court of Equity. The cases preclude all doubt on this point." "The authorities show that a fraudulent deed may be invalidated in a Court of Law if the fraud can be sufficiently proved." Indeed, in none of these cases were the fraudulent deeds absolutely void, but were only voidable at the election of the injured parties or their representatives.

In the case before us, had the original grantor been an individual, although innocent of the fraud, a Court of Law would hold the conveyance to the fraudulent grantee void, and refuse to recognize it, and why shall not the same rule prevail where the conveyance is from the Government? It is not denied that in a Court of Equity the rule would be the same. The Government was but a naked trustee, and its conveyance conveys no better title, and is entitled to no higher immunity, than that of any other trustee who holds the legal title.

The law is, that the Common Law Courts may entertain jurisdiction of questions of fraud, and that a conveyance, whether it be by deed from an individual, or by a Patent from the Government, although executed with all the forms of the law, when obtained in fraud of the rights of others, may, in an action of ejectment, be disregarded by the Court as void, at the instance of the injured party, or those holding under him.

But it was argued that our statute precludes the Court from inquiring into the validity of a Patent when opposed to a final certificate. So far from that being the case, we think the statute, if it affects the question at all, strengthens the right of the person claiming under the certificate, to resist a Patent fraudulently obtained, for it gives to his title an effect in a Court of Law before unknown.

Sec. 4, chap. 40, Rev. Stat., provides, that " the certificate of any such Register of the entry or purchase of any tract of land within his district, shall be deemed and taken to be evidence of title in the party who made such entry or purchase, or his heirs *or assigns*, and shall enable such party, his heirs *or assigns* to recover the possession of the land, described in such certificate, in any action of ejectment or forcible entry and detainer, unless a better legal and paramount title be exhibited for the same."

Sec. 5. "A Patent for land shall be deemed and considered a better legal and paramount title in the patentee, his heirs or assigns, than the official certificate of any Register of a Land Office of the United States, of the entry or purchase of the same land."

There are two prominent provisions in these two sections.

Rogers *v.* Brent.

The first is, that the equitable title, which is evidenced by the Register's certificate, shall enable the party to recover in an action of ejectment; and the other is, that the legal title, which is conveyed by the Patent, is paramount to such equitable title. The first provision is a new one, and secures to the party holding the equitable title a right which did not exist at the Common Law; while the second is merely the affirmance of a Common Law principle, and designed to prevent the previous provision being so construed as to make the equitable title paramount to the legal. It was certainly competent for the Legislature to confer upon the Courts of Law the right to protect an equitable title in an action of ejectment. Indeed, they may give the Courts of Law just so much equitable jurisdiction as they please, and prescribe the mode in which the relief shall be granted. Such is the character of the jurisdiction conferred by this statute. It is true the statute does not authorize a party to defend his possession with such equitable title, but that follows as a necessary consequence of his right to recover upon it. As before remarked, the word *paramount*, in this statute, is used for the purpose of still preserving the Common Law distinction in the grade of title, and to give a preference to the legal, when fairly obtained, over the equitable title. So, in cases arising under the registry Act. There the title acquired by the deed first recorded, is, in as unqualified terms as are used in this statute, declared to be paramount, and yet in an action of ejectment, when it is tainted with fraud, by the construction uniformly given, it loses its paramount character and must give way to a title which, by the letter of the law, is made inferior to it. By reason of its superior equity the latter prevails. When the apparently paramount title is infected with fraud, it is not the *better legal title* within the meaning of the statute. The Courts of Law are expressly authorized to protect and enforce this equitable title, and it was never the intention of the Legislature to defeat it by one nominally of a higher grade, but which was obtained in fraud of it. Such a result would not comport with the manifest intent of the Legislature or a just administration of the law. If the construction contended for

must be adopted by the Courts of Law, then the same rule must be adhered to by the Courts of Equity, and then the fraud must triumph everywhere. No statute should be so construed as to protect a fraud, for it is not to be presumed that the Legislature so designed it. When they intend such a result, they will use language which is not open to construction. If our statute gives a fraudulent Patent title a preference over another which, by the very act, is raised above its common law level, then have the Legislature weakened and prostrated that very title which they intended to elevate and strengthen. We have before shown that the Supreme Court of the United States has said, that a Patent issued upon an unauthorized entry, made after the officers of the Government had sold the land, received the purchase money, and issued a patent-certificate, conveys no title. 3 Howard, 461. And yet the construction contended for would make the Patent conclusive against the certificate holder. The statute was designed for the use and benefit of of the certificate holder, and must not be so construed as to make it destructive of his rights, which might have been protected by the Common Law.

We will now notice the case of *Bagnell* v. *Broderick*, 13 Peters, 436, to which we are referred by the defendant in error, and which, it is insisted, is in point for him. That was an action of ejectment, and the plaintiff relied upon a Patent to John Robertson, jr., issued upon the plat and certificate of location of the Surveyor General, which were in the name of the patentee, under a special Act of Congress, authorizing the relinquishment of certain lands which had been injured by an earthquake, and the location of other lands in lieu of them. There was "evidence in the record tending to show that the Morgan Byrne (under whom the defendants claimed) had made the relinquishment of the New Madrid claim;" but the same evidence showed 'that the location certificate was granted to John Robertson, jr.' The defendant relied upon a statute of Missouri which provides that an action of ejectment may be maintained upon "a New Madrid location," and the decision of the Court is placed expressly upon the ground that the defendant had no such title as would, under the statute,

maintain an action of ejectment, and hence could not defend their possession under the statute. After stating the case and referring to the statute, the Court says, "Our opinion is, first, that the location referred to in the Act is the plat and certificate of the Surveyor, returned to the Recorder of land titles:" and after stating the reasons for this construction of the statute, the Opinion proceeds: "The survey having been made and certified to the Recorder in the name of John Robertson, jr., Byrne had no title which would sustain an ejectment in any case, and of course those claiming under him cannot successfully defend themselves under the evidence they adduced." What the Judge who prepared the Opinion of the Court seems to think the decision would have been, had a different case been presented, we do not feel called upon to examine, as it does not concern us. We find no authority, in the case referred to, conflicting in the least with the views which we entertain of the law applicable to the case before us.

Having shown in what way it was competent for Rogers to prove that he did not, in the language of the issue, "unlawfully withhold the possession," it only remains to be seen whether the evidence which he offered, and which was excluded by the Court, tended to prove such a case; for, according to Mr. Greenleaf, the Court was authorized to "exclude all evidence of collateral facts, or those which are incapable of affording any reasonable presumption or inference as to the principal fact or matter in dispute." 1 Greenl. Ev., § 52. Was the evidence offered incapable of affording such reasonable presumption or inference? On the contrary it was the very foundation of the case which it was competent for him to prove. Without it, all other evidence would have been useless. Without it, it was impossible for him to make out his proposed defence. The question is, not whether it was sufficient of itself to make out the defence, but would it aid to make out the case? Would it tend to prove the defence? Most cases have to be proved by a succession of distinct facts, neither of which standing alone, would amount to anything, while all taken together form a

connected chain, and establish the issue, and from necessity a party must be allowed to present his case in such detached parts as the nature of his evidence requires. It would be no less absurd than inconvenient, when proof is offered in its proper order, of one necessary fact, to require the party to go on and offer to prove at the same time all the other necessary facts to make out the case. Such a practice would embarrass the administration of justice, and prove detrimental to the rights of parties. It may be that Rogers was bound to connect himself with Southwick's title, before he could insist that the Patent was void, because obtained in fraud of such title, but he must first prove such title to exist, before he could connect himself with it, and this he was not allowed to do. If he was bound to connect himself with Bowman's creditors, to avail himself of the fraud practiced upon them, he must first show that there were such creditors, and the judgment which proved this was ruled out by the Court. It is the right of the party, when he offers evidence in its proper order, which proves, or tends to prove any necessary fact in the case, to have it go to the jury; for the reasonable presumption is, that it will be followed by such other proof as is necessary for its proper connection; and if it is not, it then becomes irrelevant, and as such, if desired, may be withdrawn from the jury. If there is anything to induce the suspicion that the time of the Court is being trifled with, it may be proper to call upon counsel to state the connection, which they expect to give the proposed evidence, but this should ordinarily be avoided, as it is often embarrassing for counsel to anticipate their case in the presence of the opposite party. It may sometimes happen that evidence is offered so out of its proper place as to authorize the Court to exclude it for want of a proper foundation. As in this case: Had the sheriff's deed been offered without the previous proceedings, it might have been properly excluded, till the proper foundation for it was shown. No such objection, however, existed in this case. The party commenced at the foundation of his case, and offered to establish the first necessary fact, and when that was ruled out

he still persisted in offering to prove subsequent parts of his case dependent upon those previously offered and rejected, till his repeated offers had almost the appearance of wrestling with the opinion of the Court. He proceeded as far as duty or propriety required, for it was apparent then, as it is now, that the evidence was ruled out because it was the opinion of the Court that it was not competent to defeat the Patent, by the case which the evidence tended to show, and not because the party did not propose evidence enough. Nor has it been insisted here that the evidence was ruled out because Rogers did not offer to connect himself with Southwick's title, but the whole effort has been to sustain the decision upon the other ground.

We are of opinion that the Court erred in rejecting the evidence offered, and for that reason the judgment is reversed with costs, and the cause remanded.

*Judgment reversed.*